# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| SHALE SUPPORT GLOBAL HOLDINGS, LLC, *et al.*[1] | § § § § | Case No. 19-33884 (DRJ) |
| Debtors. | § § § | (Jointly Administered) |

### OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION OF SHALE SUPPORT GLOBAL HOLDINGS, LLC, *ET AL.*, AND BSP AGENCY, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

[Relates to Docket No. 198]

The Official Committee of Unsecured Creditors (the "Committee") of Shale Support Global Holdings, LLC and its related debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby files this objection (the "Objection") to *Disclosure Statement for the Joint Plan Of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 198] (the "Disclosure Statement")[2] and the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures for Confirmation of the Debtors' Plan of Reorganization, (III) Approving Ballot and Notice Forms in Connection therewith, (IV) Scheduling Certain Dates with Respect thereto, and (V) Granting*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Shale Support Global Holdings, LLC (5328) ("SSGH"); Shale Support Holdings, LLC (7814) ("SSH"); Stanton Rail Yard, LLC (5976) ("SRY"); Southton Rail Yard, LLC (8704) ("Southton"); Drying Facility Assets Holding, LLC (6424) ("DFAH"); Shale Energy Support, LLC (8523) ("SES"); Mine Assets Holding, LLC (4401) ("MAH"); and Wet Mine Assets Holding, LLC (2879) ("WMAH"). The service address for Debtor Stanton Rail Yard, LLC is 32731 Egypt Lane, Magnolia, Texas 77354. For the remainder of the Debtors, it is 600 Jefferson Street, Suite 602, Lafayette, Louisiana 70501.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Disclosure Statement.

4812-9942-5954.4

*Related Relief* [Docket No. 200] (the "DS Motion"). In support of the Objection, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1. The heart of the Joint Plan is the "Plan Settlement" between the Debtors, BSP Agency, LLC, the Joint Plan co-sponsor ("BSP") and the pre-petition term loan lenders (the "Term Loan Lenders," and together with BSP, the "Term Loan Parties") under the Debtors' Term Loan Agreement. The Plan Settlement essentially transfers all of the Debtors' value to the Term Loan Parties, transfers to the Term Loan Parties ownership in the reorganized Debtors, and leaves holders of general unsecured claims (collectively, "General Unsecured Creditors") with a modest (in all likelihood, a single digit percentage) recovery.

2. The disclosure requirements imposed by section 1125 of the Bankruptcy Code are particularly important in these Chapter 11 Cases, where the Joint Plan was negotiated and formulated among a limited number of parties—the Debtors and the Term Loan Parties. The Committee was not involved in negotiating the Joint Plan. Thus, the Disclosure Statement is the primary source of information available for virtually all other creditors and parties in interest to make an informed voting decision.

3. The Committee believes that the Court should not approve the Disclosure Statement unless the Joint Plan and Disclosure Statement are revised to address the deficiencies set forth in this Objection.

### BACKGROUND

4. On July 11, 2019 (the "Petition Date"), the Debtors commenced Chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

5.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. A proceeding to consider and grant such relief is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     On July 29, 2019, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee.

7.     On August 19, 2019, the Debtors filed the Disclosure Statement and also filed the *Joint Plan of Reorganization of Shale Support Global Holdings, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 199] (the "Joint Plan").

8.     On September 16, 2019, the Debtors filed certain previously unavailable exhibits to the Disclosure Statement, which were:

- Exhibit D – Liquidation Analysis
- Exhibit E – Financial Projections and
- Exhibit F – Liquidation Analysis.

9.     Further, the Debtors propose to file a Plan Supplement by October 16, 2019 (5 days before the voting deadline), which will allegedly disclose additional undisclosed information, including new organizational documents, Exit Facility documents, rejected and assumed executory contracts and retained Causes of Action.

**OBJECTION**

10.    Section 1125(b) of the Bankruptcy Code states that a disclosure statement must contain "adequate information" regarding a proposed plan for holders of impaired claims and interests entitled to vote on such plan. 11 U.S.C. § 1125(b). "Adequate information" means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the

3

nature and history of the debtor and the condition of the debtor's books and records … that would enable … a hypothetical investor of the relevant class to make an information judgment about the plan." 11 U.S.C. § 1125(a)(1).  The Bankruptcy Code requires that a debtor "adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan." *Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. v. Fed. Deposit Ins. Corp. (In re Westland Oil)*, 157 B.R. 100, 104 (S.D. Tex. 1993).

11. "The determination of what is adequate information is made on a case by case basis." *In the Matter of Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).  Courts, however, consider numerous factors when determining the sufficiency of the information in a disclosure statement, a number of which are not satisfied by the Debtors' Disclosure Statement. *See In re Divine Ripe, LLC*, 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2016) (listing nineteen non-exhaustive factors set forth in *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).[3]

12. The Disclosure Statement in its current form is both facially and substantively deficient and fails to satisfy the basic disclosure requirements of section 1125(a) of the Bankruptcy Code.

---

[3] The factors that can inform whether a disclosure statement provides "adequate information" include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13); the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates. *Divine Ripe*, 544 B.R. at 401-02.

4812-9942-5954.4

A. **The Disclosure Statement Lacks Adequate Information Regarding Formulation of the Proposed Joint Plan and Related Transactions.**

13. Although the Disclosure Statement briefly touches upon the negotiation and formulation of the Plan Settlement embodied in the Joint Plan,[4] such limited references to the process are insufficient to enable the creditors and parties in interest to determine whether the various aspects of the Joint Plan and the proposed treatment therein were negotiated at arms length and otherwise provides the best recoveries to the creditors while properly positioning the Debtors for rehabilitation.

14. A critical underpinning of the Plan Settlement is the value of equity in the Reorganized Debtors. The Debtors and BSP premised the Plan Settlement on a valuation converting approximately $80 million of existing obligations under the Term Loan Agreement into "New Membership Interests and a portion of the Exit Facility." *See* Disclosure Statement, §§ II, IV.B. ("The cornerstone of the reorganization contemplated by the Plan is the conversion of approximately $80 million of existing obligations under the Term Loan Agreement into New Membership Interests *and a portion* of the Exit Facility.") The Disclosure Statement does not state (a) how that $80 million is allocated between and among the equity in the respective Reorganized Debtors and the Exit Facility, and (b) how such amounts and allocations were derived.

15. The Committee has sought information about this for some time. The fact that the Debtors and BSP came to a determination on the value of the Reorganized Debtors' equity and amount of Exit Facility well before providing a disclosable version of a valuation analysis is telling. In essence, whatever valuation analysis is provided appears to be reverse engineered and designed to fit the Plan Settlement. Far more information is needed for creditors to make a

---

[4] *See* Disclosure Statement, §§ II, VI.C.

4812-9942-5954.4

reasoned judgment on the Plan Settlement and to understand how the Debtors and BSP actually arrived at their enterprise value in order to assess the economics of the Joint Plan.[5]

16.     For example, pursuant to the Plan Settlement, the Exit Facility will be "in a minimum amount of $80 million." Joint Plan, Art. I.A.56.  It is unclear what the actual debt load will be, and how the Reorganized Debtors will be able to service that debt load, in addition to satisfying other liabilities.  In addition, the Exit Facility Documents will not be filed until October 16, 2019.  *See* DS Motion, ¶ 7 (stating that the Exit Facility Documents will be filed in the Plan Supplement by October 16, 2019).  As such, any clarity on these issues will come only near the end of the voting process.

17.     The Disclosure Statement, as it stands, provides insufficient information with regards to the Plan Settlement.  Therefore, the Court should not approve the Disclosure Statement without additional disclosures.

**B.     The Disclosure Statement Lacks Adequate Information Regarding the Treatment of General Unsecured Claims.**

18.     The Joint Plan is a "pot plan" in that it creates a finite pot of money for allowed General Unsecured Creditors to share ratably.  As such, the more general unsecured claims allowed, the smaller the pro rata share of recoveries for General Unsecured Creditors.  Pursuant to the Joint Plan, convenience unsecured claims are classified in Class 5 and will receive their pro rata share of $250,000. Joint Plan, Art. III.B.5.  General Unsecured Claims are classified in Class 6 and they will receive the greater of (a) the sum of (i) $1,000,000 and (ii) the GUC Allocation of the proceeds from the Cudd Litigation,[6] if any, multiplied by (b) the Sub-Class Allocation

---

[5] The Committee notes that the Exhibit F filed on September 16, 2019 contains a two and a half page valuation analysis that is fairly generic in its description with no supporting detail.

[6] The GUC Allocation of the proceeds from the Cudd Litigation means 50% of the net proceeds of received from the claims and causes of action in that litigation in the United States District Court for the Southern District of Texas between Southton Rail Yard, LLC and Cudd Pumping Services, Inc., captioned as *Southton Rail Yard, LLC v. Cudd*

6

Percentage[7] applicable to each sub-class. Joint Plan, Art III.B.6. The Debtors disclose the uncertainty of recovering under the Cudd Litigation in the Disclosure Statement. *See* Disclosure Statement, Art. VII.I. Thus, the recovery for General Unsecured Creditors in Class 6 is likely limited to $1,000,000 allocated according to the Sub-Class Allocation Percentage.

19. The Debtors and BSP estimate that recoveries for General Unsecured Creditors in Class 6 will be between 4% to 24% based on a projected pool of claims between $15 million to $25 million. Disclosure Statement, Art. III.D. The Debtors and BSP also estimate that recoveries for unsecured convenience class claims in Class 5 will be 26% based on a projected class amount of $950,000. *Id.* The Debtors and BSP do not, however, provide any information regarding how those numbers were calculated. Indeed, the Debtors have sought to dump as many claims as possible in the Class 6 – General Unsecured Claims, including cure amounts related to assumed railcar leases.[8]

20. Further, pursuant to the Sub-Class Allocation Percentage, the Joint Plan proposes to treat General Unsecured Creditors disparately based on which Debtor the General Unsecured

---

*Pumping Services, Inc.*, Civil Action No. 18:1632 (the "Cudd Litigation"), less the $1,000,000 Minimum GUC Recovery.

[7] The Sub-Class Allocation Percentage is allocated to the sub-classes of general unsecured claims as follows:

| Debtor | Sub-Class Allocation Percentage |
|---|---|
| Shale Support Global Holdings, LLC | 0% |
| Shale Support Holdings, LLC | 0% |
| Stanton Rail Yard, LLC | 0% |
| Southton Rail Yard, LLC | 30% |
| Drying Facility Assets Holding, LLC | 12% |
| Shale Energy Support, LLC | 52% |
| Mine Assets, Holding, LLC | 0% |
| Wet Mine Assets Holding, LLC | 6% |

[8] The Debtors filed (i) the *Omnibus Motion of Debtors for Entry of an Order Authorizing the Assumption and Amendment of Certain Railcar Leases and Granting Allowed Unsecured Claims in Satisfaction of Prepetition Cure Claims* [Docket No. 222] and (ii) the *Omnibus Motion of Debtors for Entry of an Order Authorizing the Assumption and Amendment of the Wells Fargo Leases and Granting Allowed Unsecured Claims in Satisfaction of Prepetition Cure Claims* [Docket No. 225] (the "Assumption Motions") seeking the authority to classify cure amount as unsecured claims in Class 6. On September 16, 2019, the Committee filed an objection to the Assumption Motions. Docket No. 301.

4812-9942-5954.4

Creditor holds a claim. *See* Joint Plan, Art. I.A.125. The Disclosure Statement does not disclose how the Sub-Class Allocation Percentages (ranging from 0% - 52%) were developed. In addition, except for those sub-classes with zero recovery, the Disclosure Statement does not allocate the projected amount of claims or percentage recoveries by sub-class. Without information on why each sub-class of General Unsecured Creditors is receiving that specific Sub-Class Allocation Percentage, General Unsecured Creditors cannot make an informed decision regarding their proposed Joint Plan treatment. Therefore, the Debtors and BSP need to provide additional disclosure regarding the development and allocation of the Sub-Class Allocation Percentage.

21. Without knowing what claims are included in what Sub-Class Allocation in Class 6, General Unsecured Creditors cannot make an informed decision of whether voting in favor of the Joint Plan is in their best interests. The Disclosure Statement is wholly deficient in this regard.

22. The Debtors must also disclose what the expected amount of claims from the rejection of other executory contracts and unexpired leases will add to the General Unsecured Creditors claims' pool. The Debtors and BSP disclose that the amount of rejection damages "may have a material impact on the amount of General Unsecured Claims and Unsecured Convenience Class Claims." Disclosure Statement, Art. III.K. The Schedule of Rejected Executory Contracts and Unexpired Leases will not be filed until October 16, 2019 with the Plan Supplement. *See* DS Motion ¶ 7. General Unsecured Creditors should have adequate time and information regarding the impact of these rejection claims prior to voting on the Joint Plan.

**C.     The Disclosure Statement Lacks Material Information Regarding Avoidance Actions and Other Causes of Action.**

23. The Joint Plan is impermissibly vague with regards to the retention and allocation of proceeds from Avoidance Actions. While the Joint Plan defines Avoidance Actions, it does not use that term anywhere else in the Joint Plan or the Disclosure Statement. *See* Joint Plan, Art.

I.A.5. Further, the Joint Plan provides that all Causes of Action vest in the Reorganized Debtors. *See* Joint Plan, Art. IV.F., O, yet the disclosure of those Causes of Action must await the filing of the Plan Supplement. *See* DS Motion ¶ 7. Except for proceeds from the Cudd Litigation, neither the Joint Plan nor the Disclosure Statement discuss how the proceeds from Avoidance Actions and Causes of Action will be distributed.

24. Through the current Joint Plan, but without directly saying so, the Term Loan Parties appear to include proceeds from all Avoidance Actions and other Causes of Action in their recoveries by retaining them for the Reorganized Debtors. If that is the intent of the Joint Plan, then the Debtors and BSP need to clearly say it. This is particularly important in light of the third party releases provided for in the Joint Plan, which are addressed below.

**D.     Inadequate Disclosure as to Broad Third-Party Releases/ "Opt Out" should be "Opt In"**

25. The Joint Plan contains broad releases of not only the Debtors, but also layered non-Debtor third parties, including, but not limited to BSP, the Term Loan Parties, the Debtors' current *and former* directors, managers, officers and equity holders, and current and former affiliates and subsidiaries of the foregoing (as well as those entities' affiliates and subsidiaries and their current and former officers, directors, managers, equity holders, etc.). Joint Plan, Art. VIII., Disclosure Statement, Art. III. L and Art. IV. F. Significant disclosures are required regarding the factual and legal justification for such broad and sweeping third party releases. As currently drafted, the Disclosure Statement contains one conclusory statement as follows: "The Released Parties and the Exculpated Parties have made substantial and valuable contributions to the Debtors' restructuring through efforts to negotiate and implement the Plan, which will maximize and preserve the going-concern value of the Debtors for the benefit of all parties in interest." Disclosure Statement, Art. III. L. Based on this sole conclusory statement, the Debtors conclude

9

that each of the Released Parties "warrants the benefit of the release …." *Id.* Such conclusory statements are wholly inadequate.

26. At a minimum, the Disclosure Statement fails to adequately identify all of these "Released Parties." Further, the releases are of all "Causes of Action," which is very broadly defined in the Joint Plan. Joint Plan, Art. I. 13. Simply put, the proposed layering of unidentified "Released Parties," the failure to state with any specificity the legal and factual support for these sweeping third party releases and the broad net of "Causes of Action" encompassed therein renders the Disclosure Statement deficient on this important issue.

27. Further, the Debtors and BSP have proposed that the Court approve Ballots that require the creditors to "Opt Out" of these broad third party releases. The Committee objects to this scheme and urges the Court to compel the Debtors and BSP to allow creditors only to "Opt In" to any third party releases, thus ensuring that such creditors have knowingly and willingly made such decision.

28. In the Fifth Circuit, releases must be consensual. *See Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm.* (*In re Pacific Lumber Co.*), 584 F.3d 229, 252 (5th Cir. 2009) (observing that Fifth Circuit precedent "seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions"). Recently, the United States Bankruptcy Court for the Northern District of Texas analyzed the use of "opt out" and "opt in" mechanisms with regards to third party releases and denied a debtor's request to utilize the "opt out" mechanism for third party releases. *See In re Mac Churchill*, Case No. 18-41988 (Bankr. N.D. Tex. June 7, 2019) [Docket No. 156]. In a bench decision at the debtor's confirmation hearing, the Mac Churchill court adopted the ruling in *SunEdison*, which held that an opt-out provision in a ballot was not sufficient "consent" to the release to convert the failure to opt-out into affirmative consent to give the release.

4812-9942-5954.4

Hr'g Tr. at 14:4-5 *In re Mac Churchill*, No. 18-41988 (Bankr. N.D. Tex. June 7, 2019) [Docket No. 156] (citing *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017)).

**E.    Additional Material Omissions in the Disclosure Statement.**

29.    The information provided in the Disclosure Statement also fails to satisfy the "adequate information" standard under section 1125 of the Bankruptcy Code for the following reasons:

- Financial Information. As noted above, the Debtors and BSP have only very recently provided their Liquidation Analysis, Financial Projections and Valuation Analysis (Exhibits D-F), each of which appears to be quite cursory. Indeed, the Debtors and BSP have failed to provide virtually any substantive information underlying the Plan Settlement and the value of the Debtors' assets. Parties in interest cannot make an informed judgment about the Joint Plan without fulsome financial information.

- Reorganized Debtors' Management. The Disclosure Statement does not disclose who the directors and management will be of the Reorganized Debtors. *See* Disclosure Statement, Art. IV.C (stating that the initial board of directors and officers of the Reorganized Debtors will be appointed by BSP).

- Intercompany Claims. The Joint Plan provides that Intercompany Claims may be either reinstated or cancelled and released without any distribution in the sole discretion of the Debtors, with BSP's consent. The Disclosure Statement fails to disclose the amount of Intercompany Claims. Since the Joint Plan does not call for substantive consolidation and since the Sub-Class Allocation Percentage is disparate among the Debtors, more disclosure is required of the Intercompany Claims.

- Non-Debtor Affiliate Disclosures. The Disclosure Statement is devoid of any meaningful discussion of the transactions with the upstream non-Debtor affiliates and the impact, if any, on the affiliate relationships post-confirmation. The Disclosure Statement likewise fails to discuss any potential Avoidance Actions that may be available as to such non-Debtor affiliates – although those entities are receiving broad releases under the terms of the Joint Plan.

- Tax Attributes. The Debtors indicated that net operating loss carry forwards ("NOLs") were assets of the estates. *See* Disclosure Statement, Art. XII.A. The Debtors, however, have not identified—on an entity-by-entity basis—the amount of those NOLs where those NOLs reside and whether they are of value to the Reorganized Debtors.

### F.  Additional Disclosure of the Committee's Position

30. The Committee cannot support the Joint Plan at this time. The Committee believes that creditors, specifically General Unsecured Creditors, should be made aware of the Committee's concerns regarding the inadequacy of disclosures as to the proposed Joint Plan. For that reason, the Committee requests that it be allowed to provide a letter, a copy of which is attached hereto as **Exhibit A**, setting out these issues and that the letter be included in the final solicitation package provided to creditors entitled to vote on the Joint Plan.

## CONCLUSION

31. For the reasons set forth above, the Committee respectfully requests that the Court deny approval of the Disclosure Statement absent the Debtors and BSP addressing these disclosure deficiencies and grant the Committee any such other and further relief that the Court deems just, proper, and equitable.

## RESERVATION OF RIGHTS

32. The Committee continues to analyze and review the Disclosure Statement, the Joint Plan and related Exhibits and reserves all rights in connection with confirmation of the Joint Plan. The Committee submits this Objection without prejudice to, and with a full reservation of, its rights to supplement or amend this Objection in advance of, or in connection with, the hearing to approve the DS Motion, the Disclosure Statement, and/or confirmation of the Joint Plan. Nothing herein is intended to be a waiver by the Committee of any right, objection, argument, claim, or defense with respect to any matter, including matters involving the Disclosure Statement and the Joint Plan, all of which are hereby expressly reserved.

4812-9942-5954.4

**WHEREFORE**, the Committee requests that the Court (i) not approve the Disclosure Statement absent the Committee's requested modifications, (ii) order that the solicitation package include the Committee's letter, substantially in the form as attached hereto as **Exhibit A**, and (iii) provide the Committee such other and further relief as the Court may deem just, proper and equitable.

Dated:  September 17, 2019

Respectfully submitted,

**FOLEY GARDERE**
**FOLEY & LARDNER LLP**

*/s/Holland N. O'Neil*
John P. Melko
State Bar No. 13919600
1000 Louisiana, Suite 2000
Houston, Texas 77002-5011
Telephone: 713-276-5727
Email: jmelko@foley.com

-and-

Holland N. O'Neil
State Bar No. 14864700
Telephone: 214-999-4961
Email: honeil@foley.com
Marcus A. Helt
State Bar No. 24052187
Telephone: 214-999-4526
Email: mhelt@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201

**PROPOSED ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 17, 2019, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas by electronic mail.

By: */s/ Holland N. O'Neil*
Holland N. O'Neil

# **Exhibit A**

4812-9942-5954.4

**STATEMENT OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF SHALE SUPPORT GLOBAL HOLDINGS, LLC,** *ET AL.*

**Chapter 11 Case No. 19-33884 (DRJ)**

c/o Foley Gardere, Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201

September 17, 2019

To: Holders of Class 5 Unsecured Convenience Class Claims and Holders of Class 6 General Unsecured Claims of Shale Support Global Holdings, LLC and its affiliated debtors and debtors in possession

Foley Gardere, Foley & Lardner LLP is counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-referenced chapter 11 cases of Shale Support Global Holdings, LLC, *et al.*, as debtors and debtors in possession (collectively, the "Debtors"). The Committee was appointed by the United States Trustee to represent the interests of all of the Debtors' unsecured creditors. We write to advise you of the Committee's position regarding the *Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [___]] (the "Plan"). The Plan is described in, and attached as an exhibit to, the accompanying *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [___]] (the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

***The Committee has concerns regarding the Plan and cannot recommend that holders of Class 5 Unsecured Convenience Class Claims and Holders of Class 6 General Unsecured Claims to vote to accept or reject the Plan.***

The Committee cannot make a recommendation for a number of reasons, including the following:

- *First*, the Plan is a joint plan between the Debtors and BSP Agency, LLC ("BSP"). BSP is the Term Loan Agent and DIP Facility Agent and serves as the agent to the Term Loan Lenders, the Debtors' primary prepetition secured lenders. The centerpiece of the Plan is a settlement between the Debtors, BSP and the Term Loan Lenders (the "Plan Settlement")

  The Plan proposes to give the Term Loan Lenders ownership of the Reorganized Debtors and substantially all of the Debtors' assets. The Committee was not involved in negotiating the Plan and Plan Settlement. Substantially more information regarding the formulation of the Plan is required before the Committee can make a recommendation regarding the Plan.

- *Second*, the Plan provides for a range of recovery from 4% to 26% for general unsecured creditors. Your recovery within that range will depend on (a) whether your claim is classified as a Class 5 Unsecured Class Claim or a Class 6 General Unsecured Claim and (b) which Debtor is responsible for your claim. The Plan is a "pot plan" in that it creates a finite pot of money for allowed general unsecured creditors to share ratably.

    Because recoveries for general unsecured creditors are limited, the addition of claims to the general unsecured creditor pool directly dilutes recoveries for general unsecured creditors. In addition to trade claims included as general unsecured claims, the Debtors also anticipate having significant claims related to the rejection of executory contracts and unexpired leases and the proposed treatment of cure costs related to the assumption of railcar leases. The Debtors have not disclosed the impact that these rejection and assumption claims would have on trade creditor recoveries, but the amount of these claims is anticipated to be millions of dollars. The Committee cannot make a recommendation regarding the Plan without having more information regarding the impact of these additional claims on the recoveries to general unsecured creditors.

- *Third*, the Plan defines "Avoidance Actions" and other "Causes of Action." The Plan, however, is ambiguous as to the distribution of proceeds of Avoidance Actions. As to Causes of Action, the Plan provides for those to be retained by the Reorganized Debtors unless otherwise released. The Plan allocates to the general unsecured creditors only a partial contingent recovery in one Cause of Action (the Cudd Litigation) and does not appear to permit general unsecured creditors to share in proceeds from Avoidance Actions and other Causes of Action. Obviously, since the Term Loan Lenders will own the Reorganized Debtors, the retention of such claims will solely benefit the Term Loan Lenders. As the Plan provides limited recoveries for general unsecured creditors, participating in the proceeds from Avoidance Actions, at a minimum, may significantly increase general unsecured creditor recoveries.

- *Fourth*, the Committee has had insufficient time to review the Debtors' Liquidation Analysis, Financial Projections, and Valuation Analysis. The Debtors filed these documents on the evening of September 16, 2019, less than one day before the Committee's objection deadline and less than two days before the hearing to approve the Disclosure Statement. The Committee's professionals are reviewing the Debtors' financial analysis in support of the Plan and cannot make an independent determination of the validity and reasonableness of such analysis. The Committee cannot recommend whether general unsecured creditors should vote to accept or reject the Plan until its professionals have had sufficient time to review and test this information.

- *Fifth*, the Plan contains extraordinarily broad releases of the Debtors and a multitude of non-Debtor third parties, including BSP, the Term Loan Lenders, the Debtors' current and former directors, managers, officers, and equity holders and all of the

Debtors' current and former affiliates and subsidiaries (as well as those entities' affiliates and subsidiaries and their current and former officers, directors, managers, equity holders, etc.). The Disclosure Statement fails to provide information as to the identity of these "Released Parties," the consideration these "Released Parties" are providing to warrant such releases, nor otherwise describes the legal justification in support of the releases. Further, the releases are of all "Causes of Action," which is broadly defined. The Committee believes that the Debtors should provide substantial additional disclosures regarding these third party releases. Importantly, unless creditors and parties in interest "opt out" of these third party releases, they are deemed to have granted very broad releases to these "Released Parties." The Committee believes that if creditors want to "opt in" of the third party releases, they should have that election. At present, the Plan requires that parties "opt out" of the releases by so indicating on their voting ballot; in other words, if a creditor does not vote or does not "opt out," it will be deemed to have agreed to release these third parties.

***For the foregoing reasons, among others, the Committee cannot make a recommendation to holders of Class 5 Unsecured Convenience Class Claims and Holders of Class 6 General Unsecured Claims to vote to accept or reject the Plan.***

The foregoing description is not intended as a substitute for the Disclosure Statement. Creditors should read the Disclosure Statement and Plan in their entirety, and then make their own respective independent decisions as to whether the Plan is acceptable.

The Debtors have provided you with a Ballot with which to vote to accept or reject the Plan. In order to have your vote counted, you must complete and return the Ballot in accordance with the procedures set forth therein and in the accompanying Disclosure Statement Order. **PLEASE READ THE DIRECTIONS OF THE BALLOT CAREFULLY AND COMPLETE YOUR BALLOT IN ITS ENTIRETY BEFORE RETURNING IT TO THE DEBTORS' SOLICITATION AGENT**.

Should you have any questions about this letter, the Plan, the Disclosure Statement or the solicitation procedures, we would be pleased to discuss them with you at your convenience. Please direct any such questions to Holland O'Neil (214-999-4961; honeil@foley.com) or Timothy C. Mohan (720-437-2014; tmohan@foley.com).

Very truly yours,

THE OFFICIAL COMMITTEE UNSECURED CREDITORS OF SHALE SUPPORT GLOBAL HOLDINGS, LLC, *ET AL.*