## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| SHALE SUPPORT GLOBAL HOLDINGS, LLC, *et al.*,[1] | § § § | Case No. 19-33884 (DRJ) |
|  | § | (Jointly Administered) |
| Debtors. | § § |  |

**DECLARATION OF JOHN BURLACU ON BEHALF OF DONLIN, RECANO & COMPANY, INC. REGARDING VOTING AND TABULATION OF BALLOTS ACCEPTING AND REJECTING THE AMENDED JOINT PLAN OF REORGANIZATION OF SHALE SUPPORT GLOBAL HOLDINGS, ET AL., AND BSP AGENCY, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, John Burlacu, declare, under penalty of perjury to the best of my knowledge, information, and belief:[2]

1.  I am a Senior Director at Donlin, Recano & Company, Inc. ("DRC"), located at 6201 15th Avenue, Brooklyn, New York 11219. I am over the age of 18 years and competent to testify.

2.  I submit this Declaration with respect to the solicitation of votes and the tabulation of Ballots cast on the *Amended Joint Plan of Reorganization of Shale Support Global Holdings, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* attached as Exhibit A to the Disclosure Statement (as may be amended, supplemented or otherwise

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Shale Support Global Holdings, LLC (5328); Shale Support Holdings, LLC (7814); Stanton Rail Yard, LLC (5976); Southton Rail Yard, LLC (8704); Drying Facility Assets Holding, LLC (6424); Shale Energy Support, LLC (8523); Mine Assets Holding, LLC (4401); and Wet Mine Assets Holding, LLC (2879). The service address for Debtor Stanton Rail Yard, LLC is 32731 Egypt Lane, Magnolia, Texas 77354. For the remainder of the Debtors, it is 600 Jefferson Street, Suite 602, Lafayette, Louisiana 70501.

[2] Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

modified, the "Plan"). Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge, information supplied to me by the Debtors or their advisors, including DRC, and my review of relevant documents. If I were called to testify, I could and would testify competently as to the facts set forth herein on that basis.

3. In accordance with the *Order Authorizing Retention and Appointment of Donlin, Recano & Company, Inc. as Claims, Noticing, and Solicitation Agent* [Docket No. 26], DRC was authorized to assist the Debtors in connection with, *inter alia*, soliciting, receiving, and tabulating Ballots accepting or rejecting the Plan.

I. **Service and Transmittal of Solicitation Packages and Related Information.**

4. Pursuant to the Plan, holders of Claims in Classes 4, 5, and 6 as of the Voting Record Date were entitled to vote to accept or reject the Plan (the "Voting Classes").

| Class | Type of Claim |
|---|---|
| Class 4 | Secured Term Loan Claims |
| Class 5 | Unsecured Convenience Class Claims |
| Class 6 | General Unsecured Claims |

5. The procedures for the solicitation and tabulation of votes on the Plan are set forth in the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures for Confirmation of the Debtors' Plan of Reorganization, (III) Approving Ballot and Notice Forms in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 319] (the "Disclosure Statement Order"). DRC was instructed to solicit, review, determine the validity of, and tabulate

Ballots submitted to vote for the acceptance or rejection of the Plan by the holders of Claims in the Voting Classes in accordance with the Disclosure Statement Order.

6. On or around September 23, 2019, DRC posted links on the Debtors' restructuring website maintained by DRC at https://www.donlinrecano.com/Clients/ssgh/Index to provide parties with access to, among other documents, copies of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Confirmation Hearing Notice (as defined in the Disclosure Statement).

7. In accordance with the Disclosure Statement Order, on September 20, 2019, and certain days thereafter, DRC caused (a) Solicitation Packages (as defined in the *Form of Solicitation and Voting Procedures* attached as Schedule 1 to the Disclosure Statement Order) to be distributed to holders of Claims in the Voting Classes as of the Voting Record Date, and (b) non-voting notices and an opt-out form for third-party releases set forth in Article VIII.D of the Plan (the "Opt-Out Form") (together, the "Non-Voting Packages") to be distributed to holders of Claims and Interests in the non-voting Classes (the "Non-Voting Classes").[3] Proof of service of the Solicitation Packages and Non-Voting Packages is set forth in the *Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* filed with the Court on September 25, 2019 [Docket No. 361] and the *Supplemental Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Amended Disclosure Statement for the Amended Joint Plan of Reorganization of*

---

[3] DRC also caused several Solicitation Packages and Non-Voting Packages to be distributed after September 20, 2019, as a result of subsequent claim objections.

*Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* filed with the Court on October 18, 2019 [Docket No. 444].

**II.     General Tabulation Process.**

8.     As specified in the Disclosure Statement Order, September 16, 2019 (the "<u>Voting Record Date</u>") was established as the record date for determining the holders of Claims in the Voting Classes entitled to vote to accept or reject the Plan.

9.     Pursuant to the Disclosure Statement Order, DRC relied on the following information to identify and solicit holders of Claims in the Voting Classes:  (a) the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs, and amendments thereto, filed with the Court on August 19, 2019 and September 12, 2019 [Docket Nos. 165-172, 291-293]; (b) the official claims register maintained by DRC as of September 16, 2019; (c) claims information pertaining to the Debtors' chapter 11 cases as reflected in DRC's internal database to which this information was loaded; and (d) other information and instructions provided by the Debtors' and/or their advisors. Using this information, and with guidance from the Debtors and their advisors, DRC created a voting database reflecting the name, address, voting amount, and classification of Claims in the Voting Classes.  Using this voting database and the forms of Ballots approved under the Disclosure Statement Order, DRC generated Ballots for holders of Claims entitled to vote to accept or reject the Plan.

10.     Ballots returned by electronic mail, regular mail, hand delivery, or overnight delivery were received by personnel of DRC at its office in Brooklyn, New York.  Ballots received by DRC were processed in accordance with the Disclosure Statement Order.  Upon receiving Ballots, DRC took the following actions:

> a. The envelopes containing the Ballots were opened, and the contents were removed and stamped with the date and time received.  Each Ballot was then

      scanned into DRC's system and sequentially numbered (the "Sequence Number");

b. Ballots attached to electronic mail were opened, and a copy of the Ballot and the electronic mail were printed in hard copy format. Each Ballot was then scanned into DRC's system with the Sequence Number; and

c. DRC then entered into a computer database all pertinent information from each of the Ballots, including among other things, the date and time the Ballot was received, the Sequence Number, the voting dollar amount, whether the creditor submitting the Ballot elected to opt out of the third-party releases set forth in Article VIII.D of the Plan, whether the creditor submitting the Ballot voted to accept or reject the Plan, whether the creditor (for Class 5) elected to have its Unsecured Convenience Class Claim treated as a General Unsecured Claim, or whether the creditor (if in Class 6) elected to have its General Unsecured Claim treated as a Class 5 Unsecured Convenience Class Claim.

11. In order for a Ballot to be counted as valid, the Ballot must have been properly completed in accordance with the Disclosure Statement Order and executed by the relevant holder, or such holder's authorized representative, and must have been actually received by DRC by 4:00 p.m. (Prevailing Central Time) on October 21, 2019 (the "Voting Deadline"). All Ballots were to be delivered to DRC as follows: (a) if by hand delivery, or overnight courier, to Donlin, Recano & Company, Inc., Re: Shale Support Global Holdings, LLC, et al. Ballot Processing., Attn: Voting Department, 6201 15th Avenue, Brooklyn, New York 11219; (b) if by First Class mail, to Shale Support Global Holdings, LLC, et al. c/o Donlin, Recano & Company, Inc., Attn: Voting Department P.O. Box 199043 Blythebourne Station, Brooklyn, NY 11219; or (c) if by electronic mail to SSGHBallots@DonlinRecano.com with "SSGH BALLOTS" in the subject line using a format of the attachment that can be found in common workplace and industry standard format (i.e. industry-standard PDF file).

12. All validly executed Ballots cast by holders of Claims in the Voting Classes received by DRC on or before the Voting Deadline were tabulated as outlined in the Disclosure Statement Order.

13. DRC is in possession of the Ballots received by it, and copies of the same are available for review during DRC's normal business hours at 6201 15th Avenue, Brooklyn, New York 11219.

### III. The Voting Results

14. The results of the aforesaid tabulation of properly executed Ballots received on or before the Voting Deadline are set forth below and in the report annexed hereto as **Exhibit A** (the "Final Tabulation Results").

| CLASS | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Sub-Class 4A – Secured Term Loan Claims against Shale Support Global Holdings, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 4B – Secured Term Loan Claims against Shale Support Holdings LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 4C – Secured Term Loan Claims against Stanton Rail Yard, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 4D – Secured Term Loan Claims against Southton Rail Yard, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 4E – Secured Term Loan Claims against Drying Facility Assets Holding, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 4F – Secured Term Loan Claims against Shale Energy Support, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |

| CLASS | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Sub-Class 4G – Secured Term Loan Claims against Mine Assets Holding, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 4H – Secured Term Loan Claims against Wet Mine Assets Holding, LLC | $80,000,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 5A – Unsecured Convenience Class Claims against Shale Support Global Holdings, LLC[4] | $0 (00.00%) | 0 (00.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 5B – Unsecured Convenience Class Claims against Shale Support Holdings LLC[5] | $0 (00.00%) | 0 (00.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 5C – Unsecured Convenience Class Claims against Stanton Rail Yard, LLC[6] | N/A | N/A | N/A | N/A |
| Sub-Class 5D – Unsecured Convenience Class Claims against Southton Rail Yard, LLC | $308.51 (18.97%) | 1 (50.00%) | $1,317.79 (81.03%) | 1 (50.00%) |
| Sub-Class 5E – Unsecured Convenience Class Claims against Drying Facility Assets Holding, LLC[7] | $0 (00.00%) | 0 (00.00%) | $0 (00.00%) | 0 (00.00%) |

---

[4] DRC did not receive any Ballots from holders of Claims in Sub-Class 5A.

[5] DRC did not receive any Ballots from holders of Claims in Sub-Class 5B.

[6] DRC initially identified two Claims in Sub-Class 5C, but one Claim was subsequently re-classified to a different Sub-Class and the other was removed from the Voting Classes entirely due to objections filed.  *See* **Exhibit D** hereto.  Accordingly, Sub-Class 5C is vacant and DRC did not solicit votes therefrom.

[7] DRC did not receive any Ballots from holders of Claims in Sub-Class 5E.

| CLASS | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Sub-Class 5F – Unsecured Convenience Class Claims against Shale Energy Support, LLC | $61,170.02 (95.36%) | 5 (83.33%) | $2,977.40 (4.64%) | 1 (16.67%) |
| Sub-Class 5G – Unsecured Convenience Class Claims against Mine Assets Holding, LLC[8] | $0 (00.00%) | 0 (00.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 5H – Unsecured Convenience Class Claims against Wet Mine Assets Holding, LLC | $30,000 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 6A – General Unsecured Claims against Shale Support Global Holdings, LLC | $36,001,368.20 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 6B – General Unsecured Claims against Shale Support Holdings LLC | $37,407,672.35 (93.37%) | 2 (66.67%) | $2,654,625.61 (6.63%) | 1 (33.33%) |
| Sub-Class 6C – General Unsecured Claims against Stanton Rail Yard, LLC | $36,001,368.20 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 6D – General Unsecured Claims against Southton Rail Yard, LLC | $39,646,734.20 (93.72%) | 5 (83.33%) | $2,654,625.61 (6.28%) | 1 (16.67%) |
| Sub-Class 6E – General Unsecured Claims against Drying Facility Assets Holding, LLC | $36,005,607.50 (99.63%) | 2 (66.67%) | $132,804.14 (0.37%) | 1 (33.33%) |
| Sub-Class 6F – General Unsecured Claims against Shale Energy Support, LLC | $39,951,541.88 (98.96%) | 9 (81.82%) | $419,982.31 (1.04%) | 2 (18.18%) |

---

[8] DRC did not receive any Ballots from holders of Claims in Sub-Class 5G.

| CLASS | TOTAL BALLOTS RECEIVED | | | |
| --- | --- | --- | --- | --- |
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Sub-Class 6G – General Unsecured Claims against Mine Assets Holding, LLC | $36,001,368.20 (100.00%) | 1 (100.00%) | $0 (00.00%) | 0 (00.00%) |
| Sub-Class 6H – General Unsecured Claims against Wet Mine Assets Holding, LLC | $36,840,757.62 (99.73%) | 3 (75.00%) | $100,483.70 (00.27%) | 1 (25.00%) |

15. The following Ballots were not tabulated for failure to satisfy the requirements for a valid Ballot as set forth in the Disclosure Statement Order:

   a. Any Ballot not bearing a signature was excluded from the Final Tabulation Results and was assigned a defect code "A".

   b. A Ballot was deemed superseded if DRC received a subsequent properly executed and timely Ballot for the same Claims(s). Under these circumstances, the superseded Ballot was assigned a defect code of "D" and was excluded from the Final Tabulation Results.

   c. Any Ballot cast by any entity that does not hold a Claim in a Voting Class was excluded from the Final Tabulation Results and was assigned a defect code "N".

16. A complete list of all defective Ballots with explanatory defective codes is set forth on **Exhibit B**.

17. A report of any parties in the Voting Classes that checked the opt-out box on their Ballot and any parties in the Non-Voting Classes that completed and returned an Opt-Out Form is attached hereto as **Exhibit C**.  For the avoidance of doubt, this Declaration does not certify the validity or enforceability of any opt-out elections received and reported on **Exhibit C** attached hereto, but rather this Declaration is providing such information for reporting and informational purposes only.

18. A report of any parties that submitted a Ballot for which an objection was filed against their Claim causing a change in the authorized voting amount, the classification of their Claim, or the Debtor their Claim is against is reported on **Exhibit D** attached hereto.

I declare under penalty of perjury that the foregoing is true and correct and to the best of my knowledge, information and belief.

Dated: October 25, 2019
Brooklyn, New York

*/s/ John Burlacu*
John Burlacu, Senior Director
Donlin, Recano & Company, Inc.