

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
10/29/2019

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHALE SUPPORT GLOBAL HOLDINGS, LLC, *et al.*,[1] | § | Case No. 19-33884 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | |

**ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION (AS MODIFIED) OF SHALE SUPPORT GLOBAL HOLDINGS, LLC, ET AL., AND BSP AGENCY, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

(Docket No. **[476]**)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:[2]

a.   commenced, on July 11, 2019 (the "Petition Date"), these chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.   continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed on August 19, 2019, (i) the *Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 199] and (ii) the *Disclosure Statement for the Joint Plan Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al.,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Shale Support Global Holdings, LLC (5328); Shale Support Holdings, LLC (7814); Stanton Rail Yard, LLC (5976); Southton Rail Yard, LLC (8704); Drying Facility Assets Holding, LLC (6424); Shale Energy Support, LLC (8523); Mine Assets Holding, LLC (4401); and Wet Mine Assets Holding, LLC (2879). The service address for Debtor Stanton Rail Yard, LLC is 32731 Egypt Lane, Magnolia, Texas 77354. For the remainder of the Debtors, it is 600 Jefferson Street, Suite 602, Lafayette, Louisiana 70501.

[2] Capitalized terms used but not otherwise defined in this order (the "Confirmation Order") shall have the meanings given to them in the *Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan"). The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

*and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 198];

d.    filed on August 19, 2019, the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures for Confirmation of the Debtors' Plan of Reorganization, (III) Approving Ballot and Notice Forms in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 200];

e.    filed on September 18, 2019, the *Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 310];

f.    filed on September 19, 2019, the *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 320];

g.    obtained on September 18, 2019, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures for Confirmation of the Debtors' Plan of Reorganization, (III) Approving Ballot and Notice Forms in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 319] (the "Disclosure Statement Order") approving of the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

h.    caused the Solicitation Packages, notice of the Confirmation Hearing and deadline for objecting to confirmation of the Plan, notice of the Third Party Release and process for opting out, and non-voting notices to be distributed before, on or about September 23, 2019 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 361] and the *Supplemental Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 444] (together, the "Solicitation Affidavits");

i.    caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published (i) on September 24, 2019, in the national edition of *The Wall Street*

*Journal*, as evidenced by *The Wall Street Journal Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 388]; (ii) on September 24, 2019, in *Houston Chronicle*, as evidenced by the *Houston Chronicle Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 389]; (iii) on September 25, 2019, in *The Odessa American*, as evidenced by the *Odessa Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 390]; (iv) on September 25, 2019, in the *Midland Reporter-Telegram*, as evidenced by the *Midland Reporter-Telegram Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 391]; (v) on September 26, 2019, in *The Daily Advertiser*, as evidenced by *The Daily Advertiser of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 392]; (vi) on September 26, 2019, in the *San Antonio Express-News*, as evidenced by the *San Antonio Express-News Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 393]; (vi) on September 25, 2019, in the *Picayune Item*, as evidenced by the *Picayune Item Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 416]; (vii) on September 26, 2019, in *The Times-Picayune/New Orleans Advocate*, as evidenced by *The Times-Picayune/New Orleans Advocate Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 417]; and (viii) on September 26, 2019, in *The Acadiana Advocate*, as evidenced by *The Acadiana Advocate Affidavit of Publication for Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Docket No. 418] (collectively, the "<u>Publication Affidavits</u>");

j.    filed on October 16, 2019, the *Plan Supplement for the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 435] (the "<u>Initial Plan Supplement</u>"), and caused it to be distributed on October 16, 2019, to the parties listed on Exhibits 1 and 2 of that certain *Affidavit of Service* [Docket No. 436] (the "<u>Plan Supplement Affidavit</u>") filed with the Court;

k.    caused a *Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, if any, and (C) Related Procedures in Connection Therewith* to be distributed on October 18, 2019, to the

parties listed on Exhibits 1 and 2 of that certain *Affidavit of Service* [Docket No. 448] (the "Assumption Notice Affidavit") filed with the Court;

l.    caused a *Notice Regarding Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan* to be distributed on October 18, 2019, to the parties listed on Exhibits 1 and 2 of that certain *Affidavit of Service* [Docket No. 449] (the "Rejection Notice Affidavit") filed with the Court;

m.    filed on October 25, 2019, the *Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 476];

n.    filed on October 25, 2019, the *Notice of Filing of Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (the "Notice of Filing of Modified Amended Plan") [Docket No. 477];

o.    filed on October 25, 2019, the *Declaration of John Burlacu on Behalf of Donlin, Recano & Company, Inc. Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 478] (the "Voting Report");

p.    filed on October 25, 2019, the *Declaration of Gary Barton in Support of Confirmation of the Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 479] (the "Barton Declaration");

q.    filed on October 25, 2019, the *Declaration of Richard J. Shinder in Support of Confirmation of the Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 480] (the "Shinder Declaration"); and

r.    filed on October 25, 2019, the *Debtors' Memorandum of Law in Support of Confirmation of the Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 481] (the "Confirmation Brief");

s.    filed on October 25, 2019, a *Notice of Reset Hearing* [Docket No. 482] (the "Confirmation Hearing Reset Notice");

t.    caused the Plan, Notice of Filing of Modified Amended Plan, Voting Report, Barton Declaration, Shinder Declaration, Confirmation Brief, and Confirmation Hearing Reset Notice to be distributed on October 25, 2019, to the parties listed on

Exhibits 1, 2, and 3 of that certain *Affidavit of* Service [Docket No. 487] (the "Confirmation Materials Affidavit") filed with the Court; and

u.    filed on October 25, 2019, the *Notice of Filing of Amended Exhibits to Plan Supplement to Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 492] (together with the Initial Plan Supplement, as either may be modified, supplemented, or otherwise amended from time to time, the "Plan Supplement").

This Court having:

a.    entered the Disclosure Statement Order on September 18, 2019;

b.    set October 21, 2019, at 4:00 p.m. (prevailing Central Time) (the "Voting and Plan Objection Deadline") as the deadline for voting on the Plan and deadline for filing objections in opposition to the Plan;

c.    set October 29, 2019, at 9:45 a.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.    reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Shinder Declaration, the Barton Declaration, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights Filed by parties in interest on the docket of these Chapter 11 Cases;

e.    held the Confirmation Hearing;

f.    heard the statements and arguments made by counsel in respect of Confirmation;

g.    considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

h.    entered rulings on the record at the Confirmation Hearing (the "Confirmation Rulings");

i.    overruled any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

j.    taken judicial notice of all papers and pleadings Filed in these Chapter 11 Cases.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Jurisdiction and Venue.**

1.     Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334. The Court has exclusive jurisdiction to (a) determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and (b) enter a final order with respect thereto.

**B.     Eligibility for Relief.**

2.     The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**C.     Commencement and Joint Administration of these Chapter 11 Cases.**

3.     On the Petition Date, the Debtors commenced these Chapter 11 Cases.  On July 11, 2019, the Court entered an order [Docket No. 23] authorizing the joint administration of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**D.     Appointment of Committee.**

4.     On July 29, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the Debtors in these Chapter 11 Cases [Docket No. 88].

*ACTIVE 46806024v2*

**E.      Plan Supplement.**

5.      The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement.

**F.      Modifications to the Plan.**

6.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

7.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**G.      Objections Overruled.**

8.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by

reference.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**H.      Disclosure Statement Order.**

9.      On September 18, 2019, the Court entered the Disclosure Statement Order, which, among other things, fixed the Voting and Plan Objection Deadline.

**I.      Transmittal and Mailing of Materials; Notice.**

10.      As evidenced by the Solicitation Affidavits, the Publication Affidavits, the Plan Supplement Affidavit, the Confirmation Materials Affidavit, the Assumption Notice Affidavit, the Rejection Notice Affidavit, and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Scheduling Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with the Confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and the procedures set forth in the Disclosure Statement Order.  The Debtors provided due, adequate, and sufficient notice of the Voting and Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Disclosure Statement Order and the Scheduling Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**J.      Solicitation.**

11.      The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of

the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

**K.      Voting Report.**

12.      Before the Confirmation Hearing, the Debtors Filed the Voting Report.  The Voting Report was admitted into evidence during the Confirmation Hearing without objection.  The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

13.      As set forth in the Plan and the Disclosure Statement, holders of Claims or Interests in Classes 4, 5, and 6 (collectively, the "Voting Classes") were eligible to vote to accept or reject the Plan in accordance with the Solicitation Procedures.  Holders of Claims in Classes 1, 2, and 3 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of Claims and Interests in Classes 7, 8, 9, and 10 are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan.

**L.      Bankruptcy Rule 3016.**

14.      The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately Filed the Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**M.     Burden of Proof.**

15.     The Debtors and BSP, as joint proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.  Each witness who testified on behalf of the Debtors in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**N.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

16.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

> **a.   Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

17.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

> **i.     Sections 1122 and 1123(a)(1)—Proper Classification.**

18.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into ten different Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, DIP Facility Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper

purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests.

19.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.     Section 1123(a)(2)—Specification of Unimpaired Classes.

20.     Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan.  In addition, Article II of the Plan specifies that Administrative Claims, DIP Facility Claims, Professional Fee Claims, and Priority Tax Claims are Unimpaired, although the Plan does not classify these Claims.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.     Section 1123(a)(3)—Specification of Treatment of Voting Classes.

21.     Article III of the Plan specifies the treatment of each Voting Class under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.     Section 1123(a)(4)—No Discrimination.

22.     Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.     Section 1123(a)(5)—Adequate Means for Plan Implementation.

23.     The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including: (a) the restructuring of the Debtors' balance sheet and other financial transactions provided for by

11

the Plan; (b) the New Organizational Documents; (c) the consummation the Exit Facility Documents, (d) the cancellation of certain existing agreements, obligations, instruments, and Interests; (e) the continuance of certain agreements, obligations, instruments, and Interests; (f) the vesting of the assets of the Debtors' Estates in the Reorganized Debtors; and (g) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

**vi.    Section 1123(a)(6)—Non-Voting Equity Securities.**

24.    Article IV.I of the Plan provides that the New Organizational Documents shall prohibit the issuance of non-voting securities.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

**vii.    Section 1123(a)(7)—Directors, Officers, and Trustees.**

25.    The Reorganized Debtors' initial directors are set forth in the Plan Supplement. The selection of the New Boards will be determined in accordance with the New Organizational Documents, which is consistent with the interests of creditors and equity holders and public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**b.    Section 1123(b)—Discretionary Contents of the Plan.**

26.    The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Any such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b).

**i.    Impairment/Unimpairment of Any Class of Claims or Interests.**

27.     Pursuant to the Plan, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**ii.     Assumption and Rejection of Executory Contracts and Unexpired Leases.**

28.     Article V of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases as of the Effective Date unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected; (b) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) is the subject of a motion to assume an Executory Contract or Unexpired Lease that is pending on the Confirmation Date; (d) is subject to a motion to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such assumption is after the Effective Date; and (e) is the subject of Article IV.O of the Plan.

**iii.     Compromise and Settlement.**

29.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the Term Loan Lenders, DIP Lenders, and the Committee, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  Such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtors and their Estates.

30.     The Plan incorporates the Plan Settlement, which is an integrated compromise and settlement of numerous Claims, issues and disputes designed to achieve a beneficial and efficient resolution of these Chapter 11 Cases for all parties in interest.  Accordingly, in consideration for

the distributions and other benefits provided under the Plan, including the release, exculpation, and injunction provisions contained therein, the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including the settlement of issues and disputes related to certain avoidance action claims, certain claims and causes of action regarding the amount, validity, perfection, enforceability, priority or extent of the Secured Term Loan Claims, any claim to avoid, subordinate, or disallow any Secured Term Loan Claim or Deficiency Term Loan Claim, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise, and the valuation of the Debtors' businesses.  Each component of the compromise and settlement, including the treatment of Claims or Interests under the Plan, is an integral, integrated, and inextricably linked part of the Plan Settlement.

31.     Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of these Chapter 11 Cases, this Confirmation Order constitutes the Court's approval of the Plan Settlement incorporated in the Plan, because, among other things: (a) the Plan Settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the Plan Settlement, there is a likelihood of litigation involving, among other things, the settled claims and disputes, with the attendant expense, inconvenience and delay that has a possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting the Plan Settlement, including the Debtors, the Committee, the Term Loan Lenders, and the DIP Lenders, are represented by counsel that is in each case recognized as being

14

knowledgeable, competent, and experienced; (d) the Plan Settlement is the product of arms'-length bargaining and good faith negotiations between sophisticated parties; and (e) the Plan Settlement is (i) fair, equitable, and reasonable and in the best interests of the Debtors, Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, (ii) will maximize the value of the Estates by preserving and protecting the ability of the Reorganized Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and (iii) is essential to the successful implementation of the Plan.

32.     The releases of the Debtors' directors and officers are an integral component of the Plan Settlement.  The Debtors' directors and officers: (a) made a substantial and valuable contribution to the Debtors' restructuring and the Estates; (b) invested significant time and effort to make the restructuring a success and preserve the value of the Debtors' Estates in a challenging environment; (c) attended numerous board meetings related to the restructuring; and (d) are entitled to indemnification from the Debtors under state law, organizational documents, and agreements.  Litigation by the Debtors against the Debtors' directors and officers would be a distraction to the Debtors' businesses and restructuring and would decrease rather than increase the value of the Estates.  The releases of the Debtors' directors and officers contained in the Plan have the consent of the Debtors and the Releasing Parties and are in the best interests of the Estates.

### iv.     Debtor Release.

33.     The releases of claims and Causes of Action by the Debtors described in Article VIII.C of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtors' or the Reorganized Debtors' pursuit of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved

would likely outweigh any potential benefit from pursuing such Claims. The Debtor Release is fair and equitable and complies with the absolute priority rule.

34.     The Debtor Release is furthermore an integral part of the Plan and the Plan Settlement embodied therein, and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The probability of success in litigation with respect to the released Causes of Action supports the Debtor Release. In negotiations between the Debtors, the Term Loan Lenders, and the Committee, the parties identified potential Causes of Action held by the Debtors. With respect to each of these potential Causes of Action, the parties could assert colorable defenses and the probability of success is uncertain and appropriately reflected in the recovery to General Unsecured Creditors and other holders of Claims or Interests under the Plan.

35.     The overwhelming majority of Voting Classes voted in favor of the Plan, including the Debtor Release. The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able counsel and financial advisors, including BSP, the Term Loan Lenders, the DIP Loan Lenders, and the Committee. The Debtor Release is therefore the result of an arms'-length negotiation process.

36.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process, including the Term Loan Lenders, the DIP Lenders, and the Committee. Specifically, the Released Parties made significant concessions and contributions to the Debtors' Chapter 11 Cases, including, as applicable, actively supporting (and, as to BSP, becoming a co-proponent of) the Plan and these Chapter 11 Cases, and waiving substantial rights and Claims against the Debtors under the Plan. The Debtor Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with

16

the Debtors, waived contractual Claims against the Debtors, supported the Plan and these Chapter 11 Cases, and actively participated in meetings, negotiations, and implementation during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

37.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

### v.     Release by Holders of Claims and Interests.

38.     The release by the Releasing Parties (the "Third Party Release"), set forth in Article VIII.D of the Plan, is an essential provision of the Plan.  The Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third Party Release; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Third Party Release against any of the Released Parties; and (g) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

39.     The Third Party Release is an integral part of the Plan.  Like the Debtor Release, the Third Party Release facilitated participation in both the Plan and the chapter 11 process generally.  The Third Party Release is instrumental to the Plan and was critical in incentivizing the parties to support the Plan and preventing potentially significant and time-consuming litigation

regarding the parties' respective rights and interests. The Third Party Release was a core negotiation point and instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders and kept the Debtors intact as a going concern. As such, the Third Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan. Furthermore, the Third Party Release is consensual as all parties in interest, including all Releasing Parties, were provided notice of the chapter 11 proceedings, the Plan, the deadline to object to confirmation of the Plan, the opportunity to opt out of the Third Party Release, and properly informed that all holders of Claims against or Interests in the Debtors that did not either opt out or file an objection with the Court in the Chapter 11 Cases that expressly objected to the inclusion of such holder as a Releasing Party under the provisions contained in Article VIII of the Plan would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the ballots, and the applicable notices.

40.     The scope of the Third Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third Party Release. Among other things, the Plan provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third Party Release, and no other disclosure is necessary. The Debtors, as evidenced by the Solicitation Affidavits, provided sufficient notice of the Third Party Release, and no further or other notice is necessary. The Third Party Release is specific in language, integral to the Plan, a condition of the Plan Settlement, and given for substantial consideration. In light of, among other things, the value

ACTIVE 46806024v2

provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan, the Third Party Release is appropriate.

### vi.   Exculpation.

41.     The exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### vii.   Injunction.

42.     The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge, Debtor Release, the Third Party Release, and the exculpation provisions in Article VIII.E of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.   Preservation of Claims and Causes of Action.

43.     Article IV.O of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b) of the Bankruptcy Code.  Causes of Action not released by the Debtors or exculpated under the Plan will be retained by the Reorganized Debtors as provided by the Plan.  The Plan is specific and unequivocal with respect to the Causes of Action to be retained by the Debtors. The Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action. The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and holders of Claims or Interests.  For the avoidance of any doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

c.      **Section 1123(d)—Cure of Defaults.**

44.      Article V.D of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described in Article V.D of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.D of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

d.      **Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

45.      The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

46.      The Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

47.      The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good

20

faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.E of the Plan.  The Debtors and their respective agents and Affiliates have participated in good faith and in compliance with applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of the New Membership Interests, and the Debtors and their respective agents and Affiliates shall not be held liable on account of such participation for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of such securities.

48.     The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**e.      Section 1129(a)(3)—Proposal of Plan in Good Faith.**

49.     The Debtors and BSP, as co-proponents of the Plan (the "Plan Proponents"), have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Plan Proponents' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.

21

50.      The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors and officers, BSP, the Term Loan Lenders, the DIP Facility Lenders, and the Committee.  The Plan itself and the process leading to its formulation provide independent evidence of the Plan Proponents' and such other parties' good faith, serve the public interest, and assure fair treatment of holders of Claims or Interests.  Consistent with the overriding purpose of chapter 11, the Debtors filed these Chapter 11 Cases with the belief that the Debtors were in need of reorganization and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

  **f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

51.      Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

  **g.      Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

52.      The identities of the Reorganized Debtors' known directors and officers were disclosed in the Plan Supplement.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

*ACTIVE 46806024v2*

**h.      Section 1129(a)(6)—Rate Changes.**

53.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

54.      The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of these Chapter 11 Cases, establish that each holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interest of their creditors and equity holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**j.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Voting Classes.**

55.      The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Additionally, the overwhelming majority of Voting Classes voted to accept the Plan.  For the avoidance of doubt, however, even if section 1129(a)(8) has not been satisfied with respect to all of the Debtors, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the dissenting Voting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

*ACTIVE 46806024v2*

**k.     Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

56.     The treatment of Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**l.     Section 1129(a)(10)—Acceptance by at Least One Voting Class.**

57.     As set forth in the Voting Report, there is at least one Voting Class that has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code), for each Debtor.  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**m.     Section 1129(a)(11)—Feasibility of the Plan.**

58.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of Allowed Claims that will receive Cash distributions pursuant to the terms of the Plan and the funding of the Minimum GUC Recovery and the Convenience Class Recovery Pool; and (e) establishes that the Debtors or the Reorganized Debtors, as applicable, will have the financial wherewithal to pay any Claims that accrue, become payable, or are allowed by Final Order following the Effective Date.  Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

24

n.      **Section 1129(a)(12)—Payment of Statutory Fees.**

59.      Article XII.D of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors for each quarter (including any fraction of a quarter) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

o.      **Section 1129(a)(13)—Retiree Benefits.**

60.      Pursuant to section 1129(a)(13) of the Bankruptcy Code, and as provided in Article IV.N of the Plan, the Reorganized Debtors will continue to pay all obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) on and after the Effective Date in accordance with applicable law.  As a result, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

p.      **Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

61.      The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

q.      **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Voting Classes.**

62.      For the avoidance of doubt, if certain of the Voting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) at least one Voting Class at each Debtor voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims or Interests in the Voting Classes that voted to reject the Plan.  As a result, the Plan satisfies the requirements of

25

section 1129(b) of the Bankruptcy Code.   Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied.   After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Voting Classes that voted to reject the Plan.

r.      **Section 1129(c)—Only One Plan.**

63.      Other than the Plan (including previous versions thereof), no other plan has been Filed in these Chapter 11 Cases.   Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

s.      **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

64.      No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.   As evidenced by its terms, the principal purpose of the Plan is not such avoidance.   Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

t.      **Section 1129(e)—Not Small Business Cases.**

65.      These Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

u.      **Satisfaction of Confirmation Requirements.**

66.      Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

ACTIVE 46806024v2

v.       **Good Faith.**

67.      The Plan Proponents have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Plan Proponents have been, are, and will continue acting in good faith if they proceed to:  (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

w.       **Conditions to Effective Date.**

68.      The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

x.       **Implementation.**

69.      All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

y.       **Vesting of Assets.**

70.      Except as otherwise provided in the Plan, Exit Facility Documents, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors

27

pursuant to the Plan shall vest in each respective Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

> **z.**      **Treatment of Executory Contracts and Unexpired Leases.**

71.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

## II.  <u>ORDER</u>

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

72.      This Confirmation Order confirms the Plan in its entirety.

73.      This Confirmation Order approves the Plan Supplement, including the documents contained therein that may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided*, *however*, that if there is any direct conflict between the terms of the Plan and the terms

of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

74.     All holders of Claims or Interests that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.

75.     The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to:  (a) the Debtors; (b) the Committee; and (c) all holders of Claims or Interests.

76.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.     Objections.**

77.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

**B.     Findings of Fact and Conclusions of Law.**

78.     The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby

incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

## C.     The Plan Settlement.

79.     The Plan Settlement, as incorporated into the Plan, and each component of the Plan Settlement, are hereby approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of each of the Debtors, their Estates and creditors. Further, the compromises and settlements described in the Plan are deemed an integrated compromise and settlement and, accordingly, are non-severable from each other and from all other terms of the Plan. The compromises and settlements embodied in the Plan Settlement are fair, equitable, and within the range of reasonableness. The Debtors and the Reorganized Debtors, as applicable, are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Plan Settlement and each of the settlements embodied therein.

## D.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.

80.     The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party:

*ACTIVE 46806024v2*

a.      **Releases by the Debtors.**

81.     **Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, the DIP Facility, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, the Plan, or the Plan Settlement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained herein or in the Plan to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan or (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud.**

31

82.    **Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article VIII.C of the Plan by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article VIII.C of the Plan is:   (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Reorganized Debtors asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.**

b.    **Releases by Holders of Claims or Interests.**

83.    **Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement and the Plan Settlement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement,**

32

the DIP Facility, the Plan, or the Plan Settlement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein in or in the Plan to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan or (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud.

84.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article VIII.D of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article VIII.D of the Plan is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Reorganized Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

c.     Exculpation.

85.     Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause

of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Settlement, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

> d.     **Injunction.**

86.     Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized

34

Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

87.    Upon entry of this Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article VIII.F of the Plan.

**E.      Preservation of Causes of Action.**

88.      Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall have vested in them as of the Effective Date, and the Reorganized Debtors shall retain and may enforce, any Claims, demands, rights, defenses and Causes of Action that the Debtors or the Estates may hold against any Entity. Each Reorganized Debtor or its successor may pursue such retained Claims, demands, rights, defenses or Causes of Action, as appropriate, and may settle such Claims after the Effective Date without notice to parties in interest or approval of this Court.

**F.      Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

89.      In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven days after the Effective Date, the Reorganized Debtors must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice. To supplement the notice procedures described in the preceding sentence, no later than fourteen days after the Effective Date, the Reorganized Debtors must cause the Notice of Confirmation, modified for publication, to be published on at least one occasion in the national edition of the *Wall Street Journal*, the *Houston Chronicle*, in Houston, Texas, the *San Antonio Express-News*, in San Antonio, Texas, the *Midland Reporter-Telegram*, in Midland, Texas, the *Odessa American*, in Odessa, Texas, *The Times-Picayune / The New Orleans Advocate*, in New Orleans, Louisiana, *The Acadiana Advocate*, in Lafayette, Louisiana, *The Daily Advertiser*, in Lafayette, Louisiana, and the *Picayune Item*, in Picayune, Mississippi.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good,

adequate, and sufficient notice under the circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No other or further notice is necessary.

90.     The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

91.     Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Confirmation Date must File an application for final allowance of such Professional Fee Claim no later than 30 days after the Effective Date.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount this Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date and otherwise in accordance with the Plan.

92.     Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claim Bar Date.  Holders of Administrative Claims that are required, but fail, to timely File and serve a request for such payment shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their assets and properties, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any notice thereof or objection by the Reorganized Debtors or any action by the Court.

**G.     Notice of Subsequent Pleadings.**

93.     Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date (the "Post ED Notices")

37

will be limited to the following parties: (a) the U.S. Trustee; (b) counsel to BSP; and (c) any party known to be directly affected by the relief sought by such pleadings.

**H.      Retention of Jurisdiction.**

94.      This Court retains jurisdiction over these Chapter 11 Cases, all matters arising out of or related to these Chapter 11 Cases and the Plan, the matters set forth in Article XI of the Plan, and any other applicable provisions of the Plan.

**I.      Reports.**

95.      After the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors have no obligation to file with the Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports, ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the Reorganized Debtors will comply with the U.S. Trustee's quarterly reporting requirements.  From Confirmation through the Effective Date, the Debtors will File such reports as are required under the Bankruptcy Local Rules.

**J.      Effectiveness of All Actions.**

96.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to or order of the Court, or any further action by the Debtors and/or the Reorganized Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**K.      Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

97.      This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental

authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**L.      Plan Implementation Authorization.**

98.      The Debtors or the Reorganized Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, including the Exit Facility Documents and the New Organizational Documents, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the Debtors' boards of directors or the Reorganized Debtors' boards of directors will be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will

be a legal, valid, and binding obligation of the Debtors or Reorganized Debtors, as applicable, enforceable against the Debtors and the Reorganized Debtors in accordance with the respective terms thereof.  The Debtors are also authorized from and after the date hereof take additional steps to consolidate and streamline their organization, including, among other things, the merger, liquidation, or consolidation of one or more of the Debtors.

**M.    Restructuring Transactions.**

99.    On the Effective Date, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any Restructuring Transactions, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

**N.    Approval of the Exit Facility.**

100.    On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility, the terms of which will be set forth in the Exit Facility Documents.  This Confirmation Order constitutes approval of the Exit Facility and the Exit Facility Documents, and all transactions

40

contemplated thereby, including any supplemental or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and the Reorganized Debtors are authorized to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility, without further notice to or order of the Court, act, or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate the Exit Facility.

101.    On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents:  (a) shall be deemed to be granted; (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such

41

filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**O.    Binding Effect.**

102.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement (including the New Organizational Documents and the Exit Facility Documents) and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

103.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and their respective successors and assigns.

**P.     Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.**

104.    Except as otherwise provided in the Plan, each of the Debtors will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, conversion, dissolution or otherwise) under applicable law, and on the Effective Date, all property of the Estate of a Debtor, and any property acquired by a Debtor or Reorganized Debtor under the Plan, will vest in the applicable Reorganized Debtors, free and clear of all Claims, liens, charges, other encumbrances, Interests and other interests.

105.    On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by this Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

**Q.     Directors and Officers of Reorganized Debtors.**

106.    As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire, and the New Board and the officers and directors of each of the Reorganized Debtors shall be appointed in accordance with the Plan, the New Organizational Documents, and other constituent documents of each Reorganized Debtor.

107.    Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have, to the extent known and reasonably practicable, disclosed in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the New Board, as well as those Persons that will serve as an officer of the Reorganized Debtors.  To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer has also been disclosed to the extent reasonably practicable.  Each such director

ACTIVE 46806024v2

and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

R.    **Release of Liens.**

108.    Except as otherwise specifically provided in the Plan, the Exit Facility Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing required by the Reorganized Debtors.

S.    **Injunctions and Automatic Stay.**

109.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

T.    **Cancellation of Existing Securities and Agreements.**

110.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:  (a) all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit

agreements and indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be deemed satisfied in full, released, and discharged.

**U.      Securities Law Exemption.**

111.    Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Membership Interests issued to holders of Allowed Secured Term Loan Claims (collectively, the "1145 Securities"), as contemplated by Articles III.B and IV.D.1 of the Plan and Article XI of the Disclosure Statement, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, such 1145 Securities will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the Reorganized Debtors' New Organizational Documents.

*ACTIVE 46806024v2*

**V.      Section 1146 Exemption.**

112.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**W.      Professional Compensation and Reimbursement Claims.**

113.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.  In addition, the Debtors and Reorganized Debtors (as applicable) are authorized to pay any and all professional fees as contemplated by and in accordance with the Plan.

**X.      Nonseverability of Plan Provisions upon Confirmation.**

114.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order shall be effective and enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions

46

related thereto as it heretofore may have been altered or interpreted by the Court is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

**Y.    Waiver or Estoppel.**

115.    Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court before the Confirmation Date.

**Z.    Authorization to Consummate.**

116.    The Debtors are authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.  The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date, on which distributions are made in accordance with the terms of the Plan to holders of any Allowed Claims or Interests (as applicable).

**AA.    Assumption and Cure of Executory Contracts.**

117.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.  For the avoidance of doubt, on the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed rejected in accordance with the provisions and requirements of

47

sections 365 and 1123 of the Bankruptcy Code, subject to the consent of the Term Loan Agent, other than those Executory Contracts or Unexpired Leases that: (a) previously were assumed or rejected by the Debtors; (b) are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) are the subject of a motion to assume Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (d) are subject to a motion to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such assumption is after the Effective Date; and (e) are the subject of Article IV.O of the Plan; *provided* that notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve and are hereby granted the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases that is identified in Article V of the Plan and in the Plan Supplement at any time through and including 45 days after the Effective Date; *further provided*, that the Reorganized Debtors shall not be entitled to remove any Executory Contracts or Unexpired Leases from the Schedule of Assumed Executory Contracts and Unexpired Leases, or alter any cure amounts set forth therein, after the commencement of the Confirmation Hearing except with respect to Executory Contracts or Unexpired Leases for which the Reorganized Debtors subsequently lose an Assumption Objection (as defined below) relating to the cure amount. Subject to the foregoing, this Confirmation Order constitutes approval of such deemed rejections and the assumption of the Executory Contracts or Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise specified on a schedule to the Plan or notice sent to a given party, each Executory Contract and Unexpired Lease listed or to be listed thereon shall include any and all modifications, amendments, supplements, restatements and other agreements made directly or indirectly by any agreement, instrument or

other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument or other document is listed thereon.

118.    Unless a party to an Executory Contract or Unexpired Lease has objected to the cure costs identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors shall pay such cure costs in accordance with the terms of the Plan and the assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any disputed cure costs shall be determined in accordance with the procedures set forth in Article V.D of the Plan and applicable bankruptcy and nonbankruptcy law.

119.    To the extent that any dispute with respect to the amount of any payments to cure any default with respect to any Executory Contract and Unexpired Lease to be assumed pursuant to the Plan is resolved or determined, including by entry of an order by the Court, in a manner that is not acceptable to the Debtors or Reorganized Debtors, as applicable, the Debtors or Reorganized Debtors, as applicable, may reject the applicable Executory Contract or Unexpired Lease within 20 days after such resolution or determination by filing and serving upon the counterparty to such Executory Contract or Unexpired Lease a notice of rejection.  Upon service of such notice of rejection, such Executory Contract or Unexpired Lease shall be deemed to be rejected without the need for further action or an order from the Court, and such counterparty may thereafter file a proof of claim in the manner set forth in Article V.C of the Plan

49

120.    Unless otherwise agreed, the Debtors will not assume, cure, or otherwise treat, nor be deemed to reject, any contract pursuant to this Confirmation Order that is the subject of an outstanding objection to a proposed assumption or cure amount (an "Assumption Objection") at the time of entry of this Confirmation Order.  All outstanding Assumption Objections will be heard at the omnibus hearing scheduled for [●], at [●] [●].m. (prevailing Central Time), or another hearing that is convenient to the Court and the parties.  Unless otherwise agreed, the Debtors will not assume any contract that is the subject of an Assumption Objection prior to the Assumption Objection being consensually resolved or the Court having made a determination on the Assumption Objection.

**BB.    Provisions Regarding Certain Governmental Unit Liabilities.**

121.    Nothing in this Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any claim of, or liability to, a Governmental Unit arising on or after the Confirmation Date: (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan, this Order, or any implementing or supplementing plan documents, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or the Plan or to adjudicate any defense asserted under this Order or the Plan.

122.    Notwithstanding any provision in this Confirmation Order or the Plan to the contrary: (a) no Governmental Unit is required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or (C) as a condition of it being an Allowed Administrative Expense, and (b) the Internal Revenue Service may pursue all ordinary course collection remedies after the Effective Date, in accordance with the Bankruptcy Code and applicable non-bankruptcy law.  To the extent the United States' Priority Tax Claims, if any, are not paid in full in Cash on the Effective Date, such Priority Tax Claims shall, at a minimum, be paid by regular, quarterly installment payments in Cash over a period not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required by 11 U.S.C. § 1129(a)(9)(C).

## CC.    Provisions Regarding Objections

123.    The following is in resolution of *Komatsu Financial Limited Partnership's Objection to the Amended Joint Plan of Reorganization of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 452]:

a.    With respect to the Commercial Refinance and Consolidation Agreement dated April 23, 2019 by and between Komatsu Financial Limited Partnership ("Komatsu") (as assignee of Lyle Machinery Co.) and Shale Energy Support, LLC (the "Shale Energy Contract"), Komatsu shall have an allowed Other Secured Claim in the amount of $3,163,462.48, which (net of any post-petition payments received by Komatsu) shall be Reinstated pursuant to the express terms of the Shale Energy Contract;

b.    With respect to the Komatsu Parts & Services Security Agreement – Conditional Sales Contract dated August 26, 2019 by and between Komatsu (as assignee of Lyle Machinery Co.) and Shale Support Holdings, LLC (the "Shale Support Contract" and, together with the Shale Energy Contract, the "Contracts"), Komatsu shall have

an allowed Other Secured Claim in the amount of $36,938.12, which (net of any post-petition payments received by Komatsu) shall be Reinstated pursuant to the express terms of the Shale Support Contract;

c.      Upon the Effective Date, Debtors shall make a Cure payment under the Contracts in the amount of $8,635.70 plus any amounts that become due between the Confirmation Hearing and the Effective Date, which payment shall constitute a cure of all defaults under the Contracts that occurred before the Effective Date;

d.      Komatsu will retain its liens on the collateral securing the Contracts;

e.      On and after the Effective Date, following any default by Debtors with respect to one or both of the Contracts, Komatsu shall be entitled to exercise any and all remedies provided for in said Contracts without further order of the Bankruptcy Court; and

f.      Except as specifically stated herein, nothing in the Plan or this Order shall alter the legal, equitable, or contractual rights to which Komatsu may be entitled.

124.    In resolution of the *Objection of Caterpillar Financial Services Corporation to Confirmation of the Debtors' Amended Joint Plan of Reorganization* [Docket No. 368] (the "Caterpillar Objection"), in full and final satisfaction of any Other Secured Claims held by Caterpillar Financial Services Corporation ("Caterpillar"), the Debtors shall return to Caterpillar the Caterpillar Equipment (as defined in the Caterpillar Objection).

125.    In resolution of *Bexar County's Objection to the Amended Joint Plan of Reorganization of Shale Support Global Holdings, et al. and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 437], in satisfaction of the Other Secured Claims held by Bexar County (Texas):

*ACTIVE 46806024v2*

a.   on the Effective Date, the Debtors shall pay Bexar County an amount sufficient to satisfy its prepetition claim pertaining to the year 2018 tax debt, plus accrued statutory interest pursuant to sections 506(b) and 511 of the Bankruptcy Code through the date of payment (which amount is no less than $151,691.41 and no more than $201,936.52 as of November 1, 2019);

b.   all current year 2019 ad valorem taxes shall be paid in the ordinary course prior to delinquency (before February 1, 2020);

c.   in the event these taxes are not paid timely pursuant to applicable non-bankruptcy law, Bexar County shall be entitled to payment of its claim with interest at the applicable statutory rate pursuant to sections 506(b) and 511 of the Bankruptcy Code through the date of payment pursuant to sections 1129 and 511 of the Bankruptcy Code; and

d.   Bexar County shall retain its statutory tax lien as provided under applicable Texas law; and

e.   In the event that the Reorganized Debtor fails to timely pay the Bexar County claim as provided herein, Bexar may, without further order of this court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.

126.   In resolution of *Siena Lending Group LLC's Limited Objection and Reservation of Rights Regarding Amended Joint Plan of Reorganization of Shale Support Global Holdings, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 471] (the "Siena Objection"):

a. On the Effective Date, the Debtors are authorized and directed to pay to Siena Lending Group, LLC ("Siena") an amount sufficient to pay Siena's Allowed Revolving Credit Facility Claim in full, which by agreement of the parties shall include only $150,000 on account of the Loan Fees (as defined in the Siena Objection).

**DD.     Dissolution of the Committee.**

127.     Except to the extent provided in the Plan, on the Effective Date, the Committee shall dissolve, and the members of the Committee and their respective officers, employees, counsel, advisors and agents shall be released and discharged from further authority, duties, responsibilities and obligations related to and arising from and in connection with these Chapter 11 Cases; *provided, however*, that following the Effective Date the Committee shall continue in existence and have standing and a right to be heard solely to pursue Professional Fee Claims in accordance with Article II.D of the Plan. Following the completion of the remaining duties of the Committee set forth above, the retention or employment of the Committee's respective attorneys, accountants and other agents shall terminate. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date.

**EE.     Effect of Non-Occurrence of Conditions to the Effective Date.**

128.     Notwithstanding the entry of this Confirmation Order, if the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

54

**FF.    Waiver of 14-Day Stay.**

129.    Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order is effective immediately and not subject to any stay.

**GG.    Post-Confirmation Modification of the Plan.**

130.    The Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code, without further order of this Court.

**HH.    Final Order.**

131.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

       **Signed:  October 29, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit A**

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| SHALE SUPPORT GLOBAL HOLDINGS, LLC, *et al.*,[1] | § § § | Case No. 19-33884 (DRJ) |
| Debtors. | § § § | (Jointly Administered) |

## AMENDED JOINT PLAN OF REORGANIZATION (AS MODIFIED) OF SHALE SUPPORT GLOBAL HOLDINGS, LLC, *ET AL.*, AND BSP AGENCY, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Shari L. Heyen
Texas Bar No. 09564750
*HeyenS@gtlaw.com*
Karl Burrer
Texas Bar No. 24043584
*Burrerk@gtlaw.com*
David R. Eastlake
Texas Bar No. 24074165
*EastlakeD@gtlaw.com*
GREENBERG TRAURIG, LLP
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone:     (713) 374-3500
Facsimile:     (713) 374-3505


Counsel to the Debtors
and Debtors in Possession



Dated:  October 25, 2019

Emanuel C. Grillo
(*Admitted Pro Hac Vice*)
New York Bar No. 2480317
*emanuel.grillo@bakerbotts.com*
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Telephone:     (212) 408-2519
Facsimile:     (212) 259-2519


Counsel for BSP Agency, LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Shale Support Global Holdings, LLC (5328); Shale Support Holdings, LLC (7814); Stanton Rail Yard, LLC (5976); Southton Rail Yard, LLC (8704); Drying Facility Assets Holding, LLC (6424); Shale Energy Support, LLC (8523); Mine Assets Holding, LLC (4401); and Wet Mine Assets Holding, LLC (2879).  The service address for Debtor Stanton Rail Yard, LLC is 32731 Egypt Lane, Magnolia, Texas 77354.  For the remainder of the Debtors, it is 600 Jefferson Street, Suite 602, Lafayette, Louisiana 70501.

# Table of Contents

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ..................................................1
    A.     Defined Terms. ................................................................................................1
    B.     Rules of Interpretation. .................................................................................14
    C.     Computation of Time. ...................................................................................15
    D.     Governing Law. .............................................................................................15
    E.     Reference to Monetary Figures......................................................................15
    F.     Reference to the Debtors or the Reorganized Debtors....................................15
    G.    Controlling Document. ..................................................................................15

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ..................................15
    A.     Administrative Claims. ..................................................................................16
    B.     DIP Facility Claims.......................................................................................16
    C.     Payment of Fees and Expenses Under DIP Orders........................................17
    D.     Professional Fee Claims.................................................................................17
    E.     Priority Tax Claims. ......................................................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......................................................................................................................18
    A.     Classification of Claims and Interests............................................................18
    B.     Treatment of Claims and Interests. ...............................................................19
    C.     Special Provision Governing Unimpaired Claims. .........................................23
    D.     Elimination of Vacant Classes ......................................................................23
    E.     Voting Classes, Presumed Acceptance by Non-Voting Classes.........................23
    F.     Intercompany Interests ..................................................................................24
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .......................................................................................24
    H.    Controversy Concerning Impairment. ...........................................................24
    I.     Subordinated Claims......................................................................................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.........................................24
    A.     General Settlement of Claims and Interests....................................................24
    B.     Restructuring Transactions. ...........................................................................25
    C.     Reorganized Debtors. ....................................................................................25
    D.     Sources of Consideration for Plan Distributions. ...........................................26
    E.     Corporate Existence. .....................................................................................26
    F.     Vesting of Assets in the Reorganized Debtors. ...............................................27
    G.    Cancellation of Existing Securities and Agreements.......................................27
    H.    Corporate Action. .........................................................................................28
    I.     New Organizational Documents. ...................................................................28
    J.     Directors and Officers of the Reorganized Debtors........................................28
    K.     Effectuating Documents; Further Transactions. .............................................29
    L.     Section 1146 Exemption. ...............................................................................29
    M.    Director and Officer Liability Insurance........................................................30
    N.     Employee and Retiree Benefits......................................................................30

i

O.     Preservation of Causes of Action..................................................................30

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES..................................................................................................................31
    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases. ........31
    B.     Indemnification Obligations. .................................................................................32
    C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...........32
    D.     Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. .......32
    E.     Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. .................................................................................................33
    F.     Insurance Policies. .................................................................................................33
    G.     Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...........................................................................................................33
    H.     Reservation of Rights. ...........................................................................................34
    I.     Nonoccurrence of Effective Date...........................................................................34
    J.     Contracts and Leases Entered Into After the Petition Date. ..................................34

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS.....................................34
    A.     Timing and Calculation of Amounts to Be Distributed. .......................................34
    B.     Disbursing Agent. ..................................................................................................35
    C.     Rights and Powers of Disbursing Agent.................................................................35
    D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...........35
    E.     Manner of Payment. ...............................................................................................36
    F.     Distributions to Holders of Class 6 General Unsecured Claims............................36
    G.     Section 1145 Exemption. .......................................................................................37
    H.     Compliance with Tax Requirements.......................................................................37
    I.     Allocations. ............................................................................................................38
    J.     No Postpetition Interest on Claims. .......................................................................38
    K.     Foreign Currency Exchange Rate. .........................................................................38
    L.     Setoffs and Recoupment. .......................................................................................38
    M.     Claims Paid or Payable by Third Parties. ..............................................................39

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ...............................................................40
    A.     Allowance of Claims. .............................................................................................40
    B.     Claims Administration Responsibilities. ...............................................................40
    C.     Estimation of Claims and Interests. .......................................................................40
    D.     Adjustment to Claims or Interests without Objection............................................41
    E.     Time to File Objections to Claims..........................................................................41
    F.     Disallowance of Claims or Interests. .....................................................................41
    G.     Amendments to Claims or Interests........................................................................41
    H.     No Distributions Pending Allowance. ....................................................................41
    I.     Distributions After Allowance. ..............................................................................42
    J.     Expenses Incurred on or After the Effective Date .................................................42

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS ...........................................................................................................................42
    A.    Discharge of Claims and Termination of Interests. ...............................................42
    B.    Release of Liens..................................................................................................43
    C.    Releases by the Debtors. .....................................................................................43
    D.    Releases by Holders of Claims and Interests.......................................................44
    E.    Exculpation.........................................................................................................45
    F.    Injunction. ..........................................................................................................45
    G.    Protections Against Discriminatory Treatment. ....................................................46
    H.    Document Retention. ...........................................................................................46
    I.    Reimbursement or Contribution. .........................................................................46

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ..........................................................................................46
    A.    Conditions Precedent to the Effective Date. ........................................................46
    B.    Waiver of Conditions..........................................................................................47
    C.    Effect of Failure of Conditions. ..........................................................................48

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN .......................................................................................................................................48
    A.    Modification and Amendments............................................................................48
    B.    Effect of Confirmation on Modifications. ............................................................48
    C.    Revocation or Withdrawal of Plan.......................................................................48

ARTICLE XI. RETENTION OF JURISDICTION .....................................................................49

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................................51
    A.    Immediate Binding Effect....................................................................................51
    B.    Additional Documents. ........................................................................................51
    C.    Payment of Statutory Fees...................................................................................51
    D.    Statutory Committee and Cessation of Fee and Expense Payment. ......................51
    E.    Reservation of Rights..........................................................................................51
    F.    Successors and Assigns........................................................................................52
    G.    Notices. ...............................................................................................................52
    H.    Term of Injunctions or Stays................................................................................53
    I.    Entire Agreement.................................................................................................53
    J.    Exhibits. .............................................................................................................53
    K.    Nonseverability of Plan Provisions......................................................................53
    L.    Votes Solicited in Good Faith..............................................................................54
    M.    Closing of Chapter 11 Cases................................................................................54
    N.    Waiver or Estoppel. ............................................................................................54
    O.    Conflicts..............................................................................................................54
    P.    Term Loan Agent and DIP Facility Agent Consent Rights. ..................................54

## INTRODUCTION

The Debtors and BSP propose this Plan for the resolution of the outstanding claims against and interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and accomplishments during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors and BSP are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS OR INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.     Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

2.     "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date.

3.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

4.     "*Allowed*" means, with respect to any Claim, except as otherwise *provided* in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed by any party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final

Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; (y) notwithstanding anything to the contrary herein, the definition of "Allowed" herein and therein incorporates by reference the terms of paragraph D of the interim DIP Facility Order and any equivalent provision in any subsequent order approving the DIP motion on a final basis, including that there shall be no requirement that the Revolving Lender, Term Loan Agent, or Term Loan Lenders File a Proof of Claim in respect of any Secured Lender Claim in order for such Secured Lender Claim to be allowed; and (z) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

5.    "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

6.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

7.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

8.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

9.    "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

10.    "*BSP*" means BSP Agency, LLC.

11.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.    "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

2

13. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

14. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

15. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

16. "*Claims and Balloting Agent*" means Donlin, Recano & Company, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

17. "*Claims Register*" means the official register of Claims maintained by the Claims and Balloting Agent.

18. "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

19. "*Class 6 Disputed Claims Reserve*" means a reserve for a portion of the GUC Recovery to be held by the Reorganized Debtors for the benefit of the holders of Disputed Claims in each Sub-Class of Class 6, in an amount equal to the Plan Distributions such holders of Disputed Claims would be entitled to receive on the date the GUC Recovery is distributed in accordance with Article VI.F of the Plan if such Disputed Claims were Allowed in their full amounts on such date (or, if applicable, the amounts of the Disputed Claims as estimated by the Bankruptcy Court pursuant to Article VII.C of the Plan).

20. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

21. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases [Docket No. 88].

22. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A of the Plan having been (a) satisfied or (b) waived pursuant to Article IX.B of the Plan.

3

23. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

24. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

25. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26. "*Consummation*" means the occurrence of the Effective Date.

27. "*Convenience Class Recovery Pool*" means Cash in an amount not to exceed $250,000; *provided*, *however*, that any remaining Cash in the Convenience Class Recovery Pool after distributions to holders of Allowed Class 5 Claims shall be transferred to the GUC Recovery Pool.

28. "*Cudd*" means Cudd Pumping Services, Inc.

29. "*Cudd Litigation*" means ongoing litigation in United States District Court for the Southern District of Texas, Houston Division between SRY and Cudd, captioned as *Southton Rail Yard, LLC v. Cudd Pumping Services, Inc.,* Civil Action No. 18:1632.

30. "*Cudd Litigation Claims*" means the claims and causes of action asserted by any of the Debtors or Reorganized Debtors in the Cudd Litigation.

31. "*Cudd Litigation Net Proceeds*" means the proceeds of the Cudd Litigation Claims that are actually received by the Debtors or Reorganized Debtors, as the case may be, whether through settlement or pursuant to a judgement, less any fees and costs (including attorneys' and expert fees and costs) incurred by the Debtors or Reorganized Debtors, as the case may be, in connection with the Cudd Litigation.

32. "*Cure Claim*" means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

33. "*Debtors*" means, collectively, each of the following: Shale Support Global Holdings, LLC; Shale Support Holdings, LLC; Stanton Rail Yard, LLC; Southton Rail Yard, LLC; Drying Facility Assets Holding, LLC; Shale Energy Support, LLC; Mine Assets Holding, LLC; and Wet Mine Assets Holding, LLC.

34. "*Deficiency Term Loan Claim*" means the portion an Allowed Term Loan Claim that exceeds the amount of the corresponding Allowed Secured Term Loan Claim.

35. "*DFAH*" means Drying Facility Assets Holding, LLC.

4

36. "*DIP Facility*" means a senior secured super-priority delayed draw term loan facility in an aggregate principal amount of $16.6 million, provided in connection with the DIP Facility Loan Agreement and approved by the Bankruptcy Court on a final basis pursuant to the DIP Facility Order.

37. "*DIP Facility Agent*" means BSP, in its capacity as administrative agent under the DIP Facility Loan Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Facility Loan Agreement.

38. "*DIP Facility Claim*" means a Claim held by the DIP Facility Lenders or the DIP Facility Agent arising under or relating to the DIP Facility Loan Agreement or the DIP Facility Order, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Facility Loan Agreement.

39. "*DIP Facility Claim Amount*" means the aggregate principal amount with respect to drawn amounts under the DIP Facility, plus any unpaid accrued interest and unpaid fees, expenses, and other obligations under the DIP Facility Loan Agreement as of the Effective Date.

40. "*DIP Facility Loan Agreement*" means the Senior Secured, Super-Priority Debtor in Possession Credit and Security Agreement dated as of July 12, 2019, by and among each of the Debtors, the DIP Facility Agent, and the DIP Facility Lenders.

41. "*DIP Facility Lenders*" means, collectively, the lenders under the DIP Facility Loan Agreement and their successors and permitted assigns.

42. "*DIP Facility Order*" means, collectively, (a) the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, and Local Rule 4001-2 (i) Authorizing Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (ii) Granting Liens and Providing Super-Priority Administrative Expense Status, (iii) Granting Adequate Protection, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Docket No. 36], and (b) the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2 (i) Authorizing Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (ii) Granting Liens and Providing Super-Priority Administrative Expense Status, (iii) Granting Adequate Protection, and (iv) Granting Related Relief* [Docket No. 194].

43. "*Disbursing Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or facilitate distributions pursuant to the Plan.

44. "*Disclosure Statement*" means the *Amended Disclosure Statement Relating to the Joint Plan of Reorganization of Shale Support Global Holdings, LLC., et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 18, 2019, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

5

45. "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement, and the procedures for solicitation of the Disclosure Statement, in form and substance acceptable to the Term Loan Agent.

46. "*Disputed Claim*" or "*Disputed Interest*" means any Claim or Interest that the Debtors or Reorganized Debtors, as applicable, believe is unliquidated, disputed, or contingent and which has not been Allowed by Final Order of a court of competent jurisdiction or by agreement with the Debtors or Reorganized Debtors, as applicable.

47. "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing.

48. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A. of the Plan have been satisfied or waived in accordance with Article IX.B. of the Plan, and (c) the Debtors, with the consent of the Term Loan Agent, declare the Plan effective. Notwithstanding the foregoing, the Effective Date will occur not later than thirty (30) days after the Confirmation Order becomes a Final Order. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter. The Reorganized Debtors will serve a Notice of the Effective Date on the Service List.

49. "*Employment Obligations*" means any existing obligations to employees to be assumed, reinstated, or honored, as applicable, in accordance with Article IV.N of the Plan.

50. "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

51. "*Equity Security*" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in a Debtor.

52. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

53. "*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

54. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

55. "*Exculpated Parties*" means, collectively, and in each case, in its capacity as such: (i) the Debtors; (ii) the Committee and its respective members; and (iii) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

56. "*Exit Facility*" means a senior secured credit facility to be arranged and provided by one or more commercial lending institutions in a minimum amount of $80 million, on terms satisfactory to the Debtors or the Reorganized Debtors, as applicable, and the Term Loan Agent.

57. "*Exit Facility Agent*" means the administrative agent under the Exit Facility Loan Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the Exit Facility Documents.

58. "*Exit Facility Documents*" means the Exit Facility and any other guarantee, security, and relevant documentation with respect to the Exit Facility, as applicable.

59. "*Exit Facility Lenders*" means those lenders party to the Exit Facility Loan Agreement.

60. "*Exit Facility Loan Agreement*" means that certain loan agreement memorializing the Exit Facility, which shall be entered into among one or more of the Debtors or the Reorganized Debtors (as applicable), the Exit Facility Agent, and the Exit Facility Lenders.

61. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

62. "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

63. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

64. "*General Unsecured Claim*" means any Unsecured Claim that is not an Unsecured Convenience Class Claim.

65. "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

66. "*GUC Allocation of Cudd Proceeds*" means 57% of the Cudd Litigation Proceeds less the amount of the Minimum GUC Recovery.

67. "*GUC Recovery*" and "*GUC Recovery Pool*" shall mean, for each Sub-Class of General Unsecured Claims, (x) the sum of (a) the Minimum GUC Recovery, (b) any remaining Cash in the Convenience Class Recovery Pool after distributions to holders of Allowed Class 5 Claims as referenced in Article I.A.27 herein, and (c) the GUC Allocation of Cudd Proceeds ((a)-(c) shall be the "GUC Recovery Pool"), multiplied by (y) the Sub-Class Allocation Percentage applicable to such Sub-Class.

68. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

70. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

71. "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor, other than an Interest in SSH.

72. "*Interest*" means any Equity Security in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

73. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

74. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

75. "*MAH*" means Mine Assets Holding, LLC.

76. "*Minimum GUC Recovery*" means $1,000,000.

77. "*New Board*" means the board of directors of the Reorganized Debtors on and after the Effective Date to be appointed by the Term Loan Agent, in consultation with the Reorganized Debtors' management, and the identities of the directors on the New Board shall be set forth in the Plan Supplement, to the extent known at the time of filing, *provided*, *however*, that the New Board shall be appointed in compliance with section 1129(a)(5) of the Bankruptcy Code.

78. "*New Membership Interests*" means 100% of the membership interests in SSH issued and outstanding as of the Effective Date to be distributed to the holders of Allowed Secured Term Loan Claims in accordance with the Plan.

79. "*New Organizational Documents*" means the documents providing for corporate governance of the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be consistent with section 1123(a)(6) of the Bankruptcy Code (as applicable), and shall be included in the Plan Supplement.

80. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

81. "*Other Secured Claim*" means any Secured Claim, other than a Secured Lender Claim or a DIP Facility Claim, including any Secured Tax Claim or any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more Debtors, the

reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

82. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

83. "*Petition Date*" means July 11, 2019, the date on which the Debtors commenced the Chapter 11 Cases.

84. "*Plan*" means this *Amended Joint Plan of Reorganization (as Modified) of Shale Support Global Holdings, LLC, et al., and BSP Agency, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, including the Plan Supplement, which is incorporated herein by reference.

85. "*Plan Distribution*" means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

86. "*Plan Settlement*" means the good faith compromise and settlement of all Claims, Interests, and controversies as described in Article IV.A of the Plan.

87. "*Plan Settlement Parties*" means, collectively: (a) the Debtors; (b) the Term Loan Agent; (c) the Term Loan Lenders; (d) the DIP Facility Agent; and (e) the DIP Facility Lenders, each of which are party to the Plan Settlement.

88. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, in form and substance satisfactory to the Debtors and the Term Loan Agent (and such other consent rights provided for in the definitions of such documents) and as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than five days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) New Organizational Documents; (b) Exit Facility Documents; (c) Schedule of Rejected Executory Contracts and Unexpired Leases; (d) Schedule of Assumed Executory Contracts and Unexpired Leases; and (e) Schedule of Retained Causes of Action.

89. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

90. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

91. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

92. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses of Professionals that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.D of the Plan.

93. "*Professional Fee Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

94. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

95. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable Bar Date.

96. "*Refinancing Facility*" means a secured credit facility, acceptable to the Debtors or the Reorganized Debtors, as the case may be, and the Term Loan Agent, which can constitute a portion of the Exit Facility, that refinances the Revolving Credit Facility.

97. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

98. "*Released Party*" means collectively, and in each case, in its capacity as such: (i) the DIP Facility Lenders; (ii) the DIP Facility Agent; (iii) the Term Loan Agent; (iv) the Term Loan Lenders; (v) the Exit Facility Lenders; (vi) the Exit Facility Agent; and (vii) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing entities in clauses (i) through (vii), such Entity and its current and former Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Released Party." For the avoidance of doubt, the Revolving Lender is not a released party. For the further avoidance of doubt, "Released Parties" include, but are not limited to, the individual officers and directors of the Debtors and non-Debtor affiliates who are included on the non-exclusive list attached to the Disclosure Statement as Exhibit G.

99. "*Releasing Parties*" means collectively, (a) the DIP Facility Lenders, (b) the DIP Facility Agent, (c) the Term Loan Agent, (d) the Term Loan Lenders, (e) the Exit Facility Lenders, (f) the Exit Facility Agent, (g) the Committee and its members (h) all holders of Claims, (i) all holders of Interests, and (j) each of the Debtors, the Reorganized Debtors, and with respect to each of the foregoing entities in clauses (a) through (j), such Entity and its current and former

Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively; *provided* that any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Releasing Party."

100. "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

101. "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan.

102. "*Revolving Credit Agreement*" means that certain Credit Agreement, dated as of February 28, 2018 (as amended, restated, assigned or otherwise modified), by and among the Revolving Lender and each of the Debtors.

103. "*Revolving Credit Facility*" means the secured revolving credit facility provided by the Revolving Lender in connection with the Revolving Credit Agreement.

104. "*Revolving Credit Facility Claim*" means a Claim held by the Revolving Lender arising under or relating to the Revolving Credit Agreement, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the Revolving Credit Agreement.

105. "*Revolving Credit Facility Claim Amount*" means the aggregate principal amount with respect to drawn amounts under the Revolving Credit Facility, plus any unpaid accrued interest and unpaid fees, expenses, and other obligations under the Revolving Credit Agreement as of the Effective Date.

106. "*Revolving Lender*" means Siena Lending Group LLC, as lender under the Revolving Credit Agreement, and its successors and permitted assigns.

107. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

108. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

109. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors attached as Exhibit E to the Plan Supplement that are not released, waived, or transferred pursuant to the Plan, which shall be acceptable to the Debtors, the Term Loan

Agent, and the Committee, and as the same may be amended, modified, or supplemented from time to time with the consent of the Term Loan Agent, the Debtors and the Committee.

110. "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedule of Executory Contracts or Unexpired Leases, Schedule of Retained Causes of Action, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be amended, modified, or supplemented from time to time.

111. "*SEC*" means the U.S. Securities and Exchange Commission.

112. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

113. "*Secured Lender Claim*" means a Secured Term Loan Claim or a Revolving Credit Facility Claim.

114. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

115. "*Secured Term Loan Claim*" means the portion of a Term Loan Claim that is a Secured Claim.

116. "*Secured Term Loan Claim Recovery*" means (i) the New Membership Interests and (ii) a portion of the Exit Facility.

117. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law.

118. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

119. "*SES*" means Shale Energy Support, LLC.

120. "*SRY*" means Southton Rail Yard, LLC.

121. "*SSGH*" means Shale Support Global Holdings, LLC.

122. "*SSH*" means Shale Support Holdings, LLC.

123. "*Stanton*" means Stanton Rail Yard, LLC.

124. "*Sub-Class*" means, for each Class, the separate sub-Class for each Debtor, as described in Article III.A.

125. "*Sub-Class Allocation Percentage*" means the percentage of the aggregate GUC Recovery (taking into account all Sub-Classes of Class 6) allocated to each Sub-Class in Class 6, which percentage for each Sub-Class (by Debtor) is as follows:

| Debtor | Sub-Class Allocation Percentage |
|---|---|
| Shale Support Global Holdings, LLC | 0% |
| Shale Support Holdings, LLC | 0% |
| Stanton Rail Yard, LLC | 0% |
| Southton Rail Yard, LLC | 30% |
| Drying Facility Assets Holding, LLC | 12% |
| Shale Energy Support, LLC | 52% |
| Mine Assets Holding, LLC | 0% |
| Wet Mine Assets Holding, LLC | 6% |

126. "*Subordinated Claim*" means a Claim of the type described in and subject to subordination pursuant to section 510 of the Bankruptcy Code.

127. "*Subsidiary Debtors*" means WMAH, DFAH, SRY, and SES.

128. "*Term Loan Agent*" means BSP, in its capacity as administrative agent under the Term Loan Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the Term Loan Agreement.

129. "*Term Loan Lenders*" means, collectively, the lenders under the Term Loan Agreement and their successors and permitted assigns.

130. "*Term Loan Agreement*" means that certain Amended and Restated Credit Agreement, dated as of August 15, 2017 (as amended, restated, assigned or otherwise modified), by and among each of the Debtors, the Term Loan Agent, and the Term Loan Lenders.

131. "*Term Loan Claim*" means a Claim held by the Term Loan Lenders or the Term Loan Agent arising under or relating to the Term Loan Agreement, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the Term Loan Agreement.

132. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

134. "*Unsecured Claim*" means any Claim that is not an Administrative Claim, a Professional Fee Claim, a Secured Tax Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Lender Claim, or a DIP Facility Claim.

135. "*Unsecured Convenience Class Claim*" means: (a) any Unsecured Claim (including prepetition accrued interest) in the amount of $30,000 or less that does not elect on its ballot to be treated as a General Unsecured Claim; or (b) any General Unsecured Claim (including prepetition accrued interest) in an amount in excess of $30,000 that the holder thereof elects, pursuant to such holder's ballot or such other election accepted by the Debtors, to have reduced to the amount of $30,000 and to be treated as a Class 5 Unsecured Convenience Class Claim.

136. "*Voting Deadline*" means October 21, 2019 at 4:00 p.m. prevailing Central Time.

137. "*WMAH*" means Wet Mine Assets Holding, LLC.

B.      *Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.       *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.       *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Texas shall be governed by the laws of the state of incorporation of the relevant Debtor or the Reorganized Debtors, as applicable.

E.       *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.       *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.       *Controlling Document.*

In the event of an inconsistency between the Plan, and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Facility Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

15

A.     *Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their businesses after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except for Professional Fee Claims and DIP Facility Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the later of (1) 180 days after the Effective Date and (2) 180 days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any notices, objection, or other action from the Reorganized Debtors or any action or approval by the Bankruptcy Court.

B.     *DIP Facility Claims.*

Except to the extent that a holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Facility Claim, the holder of such Allowed DIP Facility Claim shall receive a principal portion of the Exit Facility equal to the DIP Facility Claim Amount, and all commitments under the DIP Facility Loan Agreement shall terminate.  For the avoidance of doubt, the DIP Facility Claims shall be Allowed in the amount of the DIP Facility Claim Amount.

Upon the satisfaction of the DIP Facility Claims in accordance with the terms of this Plan, on the Effective Date all liens and security interests granted to secure such obligations shall be terminated and of no further force and effect.

## C.  Payment of Fees and Expenses Under DIP Orders

On the Effective Date, the Debtors or Reorganized Debtors (as applicable) shall pay all fees, expenses and disbursements of (a) the DIP Facility Agent and (b) the Revolving Lender, in each case, that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the applicable DIP Facility Order.  All payments of fees, expenses, or disbursements pursuant to this Article II.C shall be subject in all respects to the terms of the DIP Facility Order.  The Debtors' obligation to reimburse the DIP Facility Agent and the Revolving Lender under, as applicable, the DIP Facility Loan Agreement, the Revolving Credit Agreement, or the DIP Facility Order, for all fees, expenses, and disbursements, to the extent not indefeasibly paid in full in Cash on the Effective Date or otherwise satisfied by the Debtors in a manner acceptable to the DIP Facility Agent or Revolving Lender, as applicable, shall survive the Effective Date and shall not be released or discharged pursuant to the Plan or Confirmation Order, notwithstanding any provision hereof or thereof to the contrary.

## D.  Professional Fee Claims.

### 1.  Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 30 days after the Effective Date.  Objections to Professional Fee Claims shall be due 21 days after the Filing of the same.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

### 2.  Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further notice, action or order of the Bankruptcy Court.

### 3.  Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the

Confirmation Date, and shall deliver such estimate to the Debtors no later than five days before the Confirmation Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Reorganized Debtors, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

E. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor and the classifications set forth in Classes 1 through 10 shall be deemed to apply to each Debtor. Each Class shall be deemed to constitute separate Sub-Classes of Claims against and Interests in each of the Debtors, as applicable, and each such Sub-Class shall vote as a single separate Class for, and the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to, each of the Debtors. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

18

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Revolving Credit Facility Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Secured Term Loan Claims | Impaired | Entitled to Vote |
| 5 | Unsecured Convenience Class Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 8 | Interests in the Subsidiary Debtors | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 9 | Interests in SSGH, SSH, Stanton and MAH | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B.*      *Treatment of Claims and Interests.*

   1.      <u>Class 1 - Other Secured Claims</u>

      (a)      *Classification*:  Class 1 consists of any Other Secured Claims against any Debtor.

      (b)      *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Secured Claim, each holder of an Allowed Class 1 Claim shall receive, at the option of the applicable Debtor, with the consent (such consent not to be unreasonably withheld) of the Term Loan Agent:

         (i)      payment in full in Cash of its Allowed Class 1 Claim;

         (ii)      the collateral securing its Allowed Class 1 Claim;

         (iii)      Reinstatement of its Allowed Class 1 Claim; or

         (iv)      such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

19

(c)  *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

2.  Class 2 - Other Priority Claims

(a)  *Classification*:  Class 2 consists of any Other Priority Claims against any Debtor.

(b)  *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Claim, each holder of an Allowed Class 2 Claim shall receive Cash in an amount equal to such Allowed Class 2 Claim on the later of:

(i)  the Effective Date; or

(ii)  the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 2 Claim.

(c)  *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

3.  Class 3 – Revolving Credit Facility Claims

(a)  *Classification*: Class 3 consists of all Revolving Credit Facility Claims

(b)  *Treatment*: On the Effective Date, except to the extent that a holder of an Allowed Revolving Credit Facility Claim agrees to a less favorable treatment, all Allowed Revolving Credit Facility Claims shall, at the option of the Debtors, with the consent (such consent not to be unreasonably withheld) of the Term Loan Agent, be either:

(i)  if the Debtors obtain a Refinancing Facility, paid in full in Cash from the Refinancing Facility; or

(ii)  if the Debtors do not obtain a Refinancing Facility, Reinstated and otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)  *Voting*: Class 3 is Unimpaired under the Plan.  Holders of Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section

20

1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

4.    Class 4 – Secured Term Loan Claims

    (a)    *Classification*:  Class 4 consists of all Secured Term Loan Claims.

    (b)    *Allowance*:   The Secured Term Loan Claims shall be Allowed in the aggregate amount of $80,000,000.

    (c)    *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Secured Term Loan Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Secured Term Loan Claim, each holder of an Allowed Class 4 Claim shall receive its Pro Rata share of the Secured Term Loan Claim Recovery.

    (d)    *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.    Class 5 - Unsecured Convenience Class Claims

    (a)    *Classification:*  Class 5 consists of all Unsecured Convenience Class Claims against any Debtor.

    (b)    *Treatment:*  On the Effective Date, except to the extent that a holder of an Allowed Unsecured Convenience Class Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Unsecured Convenience Class Claim, each holder of an Allowed Class 5 Claim shall receive its Pro Rata share of the Convenience Class Recovery Pool. Any funds remaining in the Convenience Class Recovery Pool after payment of all Allowed Class 5 Claims shall be transferred to the GUC Recovery Pool.  *See* Article I.A.27.

    (c)    *Voting:*  Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.    Class 6 - General Unsecured Claims

    (a)    *Classification:*  Class 6 consists of all General Unsecured Claims against any Debtor.

    (b)    *Treatment:*  In accordance with the Plan Settlement, and except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each General Unsecured Claim, each holder of an Allowed Class 6 Claim shall receive its Pro Rata share of the GUC Recovery applicable to the Sub-Class for such Allowed

Class 6 Claim, which distributions shall be made in accordance with Article VI.F of the Plan. Deficiency Term Loan Claims shall be treated as Allowed General Unsecured Claims. Pursuant to the Plan Settlement, as of the Effective Date, each holder of a Deficiency Term Loan Claim shall be deemed to have waived such Deficiency Term Loan Claim and shall not be entitled to share in the GUC Recovery on account of such Deficiency Term Loan Claim.

(c)   *Voting:*  Class 6 is Impaired under the Plan.  Holders of Allowed Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.   Class 7 - Intercompany Claims

(a)   *Classification:*  Class 7 consists of all Intercompany Claims.

(b)   *Treatment:*  On the Effective Date, Class 7 Claims shall be, at the option of the Debtors, with the consent (such consent not to be unreasonably withheld) of the Term Loan Agent, either Reinstated or cancelled and released without any distribution.

(c)   *Voting:*  Class 7 is Unimpaired if the Class 7 Claims are Reinstated or Impaired if the Class 7 Claims are cancelled.  Holders of Class 7 Claims are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code.  Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

8.   Class 8 - Interests in the Subsidiary Debtors

(a)   *Classification*:  Class 8 consists of all of the Interests in the Subsidiary Debtors.

(b)   *Treatment*:  On the Effective Date, Class 8 Interests shall be, at the option of the Debtors, with the consent (such consent not to be unreasonably withheld) of the Term Loan Agent, either Reinstated or cancelled and released without any distribution.

(c)   *Voting*:  Class 8 is Unimpaired if the Class 8 Claims are Reinstated or Impaired if the Class 8 Claims are cancelled. Holders of Class 8 Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

9.   Class 9 - Interests in SSGH, SSH, Stanton and MAH

(a)   *Classification*:  Class 9 consists of all Interests in SSGH, SSH, Stanton and MAH.

(b) *Treatment*:  On the Effective Date, each Interest in SSGH, SSH, Stanton and MAH shall be cancelled and released without any distribution, and each of SSGH, Stanton, and MAH shall be dissolved.

(c) *Voting*:  Class 9 Interests are Impaired under the Plan.  Holders of Class 9 Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 9 Interests are not entitled to vote to accept or reject the Plan.

10. <u>Class 10 – Subordinated Claims</u>

(a) *Classification:*  Class 10 consists of all Subordinated Claims.

(b) *Allowance*:    Notwithstanding    anything    to    the    contrary    herein,    a Subordinated Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any valid Subordinated Claim and believe that no such Subordinated Claim exists.

(c) *Treatment:*  Allowed Subordinated Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Subordinated Claims will not receive any distribution of account of such Allowed Subordinated Claims.

(d) *Voting:*  Class 10 Claims are Impaired under the Plan.  Holders (if any) of Class 10 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders (if any) of Class 10 Claims are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

D.    *Elimination of Vacant Classes*

Any Class or Sub-Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes, Presumed Acceptance by Non-Voting Classes*

If a Class or Sub-Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class or Sub-Class vote to accept or reject the Plan, the

holders of such Claims or Interests in such Class or Sub-Class shall be deemed to have accepted the Plan.

F.    *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of New Membership Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by Class 4.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class or Sub-Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class or Sub-Class of Claims or Interests to render such Class or Sub-Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan (including (1) the Term Loan Lenders' and DIP Lenders' agreement to (A) convert approximately $80 million

of funded debt into the New Membership Interests and a portion of the Exit Facility, (B) waive the Deficiency Term Loan Claims in the approximate amount of $30 million, (C) pay in full priority Claims and certain unsecured trade Claims, including all Claims that the Debtors were authorized to pay under any prior orders entered by the Bankruptcy Court in the Chapter 11 Cases, (D) fund the GUC Recovery and the Convenience Class Unsecured Recovery Pool for the benefit of holders Allowed General Unsecured Claims (other than Deficiency Term Loan Claims) and Allowed Unsecured Convenience Class Claims, and (E) forgo any claim for the diminution in value of their Prepetition Collateral (as defined in the DIP Facility Order), and (2) the Exit Facility to provide the Debtors with a flexible and sustainable capital structure), upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan (collectively, the "Plan Settlement"). The Plan shall be deemed a motion to approve the Plan Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court the Plan Settlement is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

On the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in the Plan, the issuance of all securities, notes, instruments, certificates , and other documents required to be issued pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

C.    *Reorganized Debtors.*

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt its New Organizational Documents; provided however that each of SSGH, Stanton, and MAH shall be dissolved. The Reorganized Debtors shall be authorized to adopt any other

agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

D.  *Sources of Consideration for Plan Distributions.*

The Reorganized Debtors shall fund distributions under the Plan with: (1) Cash on hand, including Cash from operations; (2) the New Membership Interests; and (3) the proceeds from the Exit Facility, as applicable.

1.  Issuance of New Membership Interests.

The issuance of the New Membership Interests, including options, or other equity awards, if any, by Reorganized SSH is authorized without the need for any further corporate action or without any further action by the holders of Claims or Interests. Reorganized SSH shall be authorized to issue the New Membership Interests pursuant to its New Organizational Documents. On the Effective Date, the Debtors shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the New Membership Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

2.  Exit Facility.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility, the terms of which will be set forth in the Exit Facility Documents.

To the extent applicable, Confirmation of the Plan shall be deemed (a) approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith), to the extent not approved by the Court previously, and (b) authorization for the Debtors or the Reorganized Debtors, as applicable, to, without further notice to or order of the Court, (i) execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including the Exit Facility Documents and (ii) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as (A) the Debtors, with the consent of the Term Loan Agent or (B) Reorganized Debtors (the foregoing (A) or (B) as applicable), may deem to be necessary to consummate the Exit Facility.

E.  *Corporate Existence.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each

applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

F.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan, Exit Facility Documents, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, SSGH, Stanton, and MAH shall be dissolved.

G.      *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements, shall be cancelled and the obligations of the Debtors shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan. Notwithstanding anything to the contrary herein, but subject to any applicable provisions of Article VI, the DIP Facility Loan Agreement and the Term Loan Credit Agreement shall continue in effect solely to the extent necessary to: (1) permit holders of Claims under either the DIP Facility Loan Agreement or the Term Loan Credit Agreement to receive Plan Distributions; (2) permit the Reorganized Debtors, the DIP Facility Agent, and the Term Loan Agent to make Plan Distributions on account of the Allowed Claims under the DIP Facility Loan Agreement and the Term Loan Credit Agreement, as applicable, and deduct therefrom such reasonable compensation, fees, and expenses (a) due to the DIP Facility Agent or Term Loan Agent under the DIP Facility Loan Agreement or the Term Loan Credit Agreement, as applicable, or (b) incurred by the DIP Facility Agent or Term Loan Agent in making such Plan Distributions; and (3) permit the DIP Facility Agent and the Term Loan Agent to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of this Plan. Except as provided in this Plan (including Article VI of this Plan), on the Effective Date, the DIP Facility Agent, the Term Loan Agent, and their respective agents, successors and assigns shall be automatically and fully discharged of all of their duties and obligations associated with the DIP Facility Loan Agreement and the Term Loan Credit Agreement, as applicable. The commitments and obligations (if any) of the Term Loan Lenders and/or the DIP Facility Lenders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries or any of their respective successors or assigns under the DIP Facility Loan Agreement or the Term Loan Credit Agreement, as applicable, shall fully terminate and be of no further force or effect on

the Effective Date. To the extent that any provision of the DIP Facility Agreement or DIP Facility Order are of a type that survives repayment of the subject indebtedness, such provisions shall remain in effect notwithstanding satisfaction of the DIP Facility Claims.

H.    *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the Employment Obligations; (2) selection of the directors and officers for the Reorganized Debtors; (3) the distribution of the New Membership Interests; (4) implementation of the Restructuring Transactions; (5) the Exit Facility Documents; (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (7) adoption of the New Organizational Documents; (8) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (9) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Membership Interests, the New Organizational Documents, the Exit Facility Documents (as applicable), and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.    *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be amended in a manner acceptable to the Debtors and the Term Loan Agent, as may be necessary to effectuate the transactions contemplated by the Plan. Each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation. The New Organizational Documents will prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. For the avoidance of doubt, shall be included as exhibits to the Plan Supplement.

J.    *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire, and the initial boards of directors, including the New Board, and the officers of each of the Reorganized Debtors shall be appointed by the Term Loan Agent in accordance with

the respective New Organizational Documents. The New Board shall initially consist of five (5) members. The members of the New Board will be identified in the Plan Supplement, to the extent known at the time of filing. In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the members of the New Board and any Person proposed to serve as an officer of the Reorganized Debtors shall be disclosed at or before the Confirmation Hearing, in each case to the extent the identity of such proposed director or officer is known at such time. To the extent any such director or officer of the Reorganized Debtors is an Insider, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

K.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

L.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the Exit Facility, as applicable; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.      *Director and Officer Liability Insurance.*

On or before the Effective Date, the Debtors shall purchase and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement.  Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

N.      *Employee and Retiree Benefits.*

Unless otherwise provided herein, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

O.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII and Exhibit E to the Plan Supplement.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

30

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that the Reorganized Debtors shall seek Bankruptcy Court approval of any settlement of the Cudd Litigation by filing a motion and providing notice to all known holders of Allowed Class 6 Claims.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and subject to the consent of the Term Loan Agent, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; (2) are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (3) are the subject of a motion to assume Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (4) are subject to a motion to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such assumption is after the Effective Date; or (5) are the subject of Article IV.O of the Plan. For the avoidance of doubt, the Debtors shall seek to assume or reject Executory Contracts and Unexpired Leases in consultation with the Term Loan Agent and with the consent (such consent not to be unreasonably withheld) of the Term Loan Agent.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Bankruptcy Order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Executory Contracts and Unexpired Leases identified in this Article V and in the Plan Supplement at any time through and including 45 days

after the Effective Date; *provided*, *however*, that the Reorganized Debtors shall not be entitled to remove any Executory Contracts or Unexpired Leases from the Schedule of Assumed Executory Contracts and Unexpired Leases, or alter any cure amounts set forth therein, after the commencement of the Confirmation Hearing except with respect to Executory Contracts or Unexpired Leases for which the Reorganized Debtors subsequently lose an objection to the cure amount.

B.      *Indemnification Obligations.*

All indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.5 hereof.

D.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the

Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  At least ten days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least three days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

E.      *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

F.      *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements,

33

licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*H.     Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contract and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

*I.     Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

*J.     Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.     Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed

Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent.*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.      *Rights and Powers of Disbursing Agent.*

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

3.      Quarterly Reporting by the Disbursing Agent.

The Disbursing Agent shall be obligated to prepare and file a Quarterly Report reflecting all disbursements made by the Disbursing Agent during the preceding quarter until all disbursement obligations are fulfilled pursuant to the Plan.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2. <u>Delivery of Distributions in General</u>.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further*, *however*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder.

3. <u>Minimum Distributions</u>.

No Cash payment of less than $50.00 shall be made to a holder of an Allowed Claim on account of such Allowed Claim.

4. <u>Undeliverable Distributions and Unclaimed Property</u>.

In the event that any distribution to any holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred; provided, however, that any unclaimed disbursements from the GUC Recovery shall be returned to the GUC Recovery Pool for redistribution to the Class 6 creditors.

E. *Manner of Payment.*

1. All distributions of the New Membership Interests to the holders of Allowed Term Loan Claims under the Plan shall be made by the Disbursing Agent on behalf of the Reorganized Debtors.

2. All distributions of Cash to the holders of Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.

3. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F. *Distributions to Holders of Class 6 General Unsecured Claims.*

Not later than 180 days after the Effective Date, the Disbursing Agent shall distribute to each holder of an Allowed Class 6 General Unsecured Claim its Pro Rata share of the Minimum

GUC Recovery less any Class 6 Disputed Claims Reserve and any other reserves provided for in the Plan.

Upon the later of 180 days after the Effective Date and 60 days after the Reorganized Debtors receive Cudd Litigation Net Proceeds, the Disbursing Agent shall distribute to each holder of an Allowed Class 6 General Unsecured Claim its Pro Rata share of the GUC Allocation of Cudd Proceeds less any Class 6 Disputed Claims Reserve and any other reserves provided for in the Plan.

Upon the completion of the Claims reconciliation process in accordance with the procedures set forth in Article VII of the Plan, the Disbursing Agent shall distribute the Class 6 Disputed Claims Reserve to the holders of Allowed Class 6 General Unsecured Claims such that, after giving effect to such distribution, but subject to the next paragraph below, each holder of an Allowed General Unsecured Claim shall have received its Pro Rata share of the GUC Recovery. If all Allowed General Unsecured Claims are paid in full, any amounts remaining in the GUC Recovery shall revert to the Reorganized Debtors.

Any holder of a Disputed Claim in Class 6 that ultimately becomes an Allowed Claim shall (i) receive no more from the Class 6 Disputed Claims Reserve than the amount reserved with respect to such Claim in accordance with the Plan; and (ii) not have recourse to the Debtors, the Reorganized Debtors, or any property transferred pursuant to the Plan (other than the Unsecured Creditor Recovery and the Class 6 Disputed Claims Reserve).

With respect to the calculation of distributions to holders of Allowed Class 6 General Unsecured Claims and the Class 6 Disputed Claims Reserve, the Reorganized Debtors and the Disbursing Agent shall take into account the Sub-Classes and applicable Sub-Class Allocation Percentages.

G.      *Section 1145 Exemption.*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Membership Interests, as contemplated by Article III.B hereof, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, such New Membership Interests will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the Reorganized Debtors' New Organizational Documents.

H.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors

and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

I.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

J.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

K.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

L.      *Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to applicable law, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder.  In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment in accordance with applicable law and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on

or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

*M.    Claims Paid or Payable by Third Parties.*

    1.    Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

    2.    Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to:  (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  In addition, the Reorganized Debtors shall continue to retain Gary Barton as Chief Restructuring Officer to assist with Claims administration. The Reorganized Debtors and Mr. Barton shall be obligated to prepare and file a Quarterly Report setting forth:

(1)      the status of claim reconciliations in each Sub-Class as to each Debtor;

(2)      the status of Disputed Claims and the Disputed Claims Reserve; and

(3)      the status of the Convenience Class Recover Pool and the GUC Recovery Pool.

C.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims or extending any deadline for objecting to such claims.

F.      *Disallowance of Claims or Interests.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by the Entity have been turned over or paid to the Reorganized Debtors.

All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Claims or Interests.*

Except as provided herein, on or after the Effective Date, a Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII.B hereof, no payment or distribution provided under the Plan shall be made on account of such Claim

or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.     *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

J.     *Expenses Incurred on or After the Effective Date*

The amount of any reasonable fees and expenses incurred by the Reorganized Debtors or Mr. Barton in fulfilling the terms of this Article VII on or after the Effective Date shall be paid in Cash by the Reorganized Debtors.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### B. Release of Liens.

Except as otherwise provided in the Exit Facility Documents, the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### C. Releases by the Debtors.

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, the DIP Facility, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, the Plan, or the Plan Settlement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan or (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud.

43

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.C is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Reorganized Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

### D. *Releases by Holders of Claims and Interests.*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Exit Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement and the Plan Settlement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, or the Plan Settlement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan or (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.D is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Reorganized Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

E.    **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Settlement, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    **Injunction.**

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

   1.      the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Term Loan Agent, and shall;

(a)     authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)     decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     authorize the Debtors, as applicable or necessary, to: (i) implement the Restructuring Transactions; (ii) distribute the New Membership Interests pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the Plan, including Cash, and the New Membership Interests; and (iv) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement, including the Exit Facility;

(d)     authorize the implementation of the Plan in accordance with its terms; and

(e)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

2.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed, and the Plan and shall be in form and substance acceptable to the Debtors and the Term Loan Agent to the extent required under the Plan;

4.     all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court; and

5.     the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein, pursuant to documentation acceptable to the Debtors and the Term Loan Agent.

B.     *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, with the consent of the Term Loan Agent, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

48

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.     ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.     enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.   issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.M hereof;

13.   enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.   determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.   enter an order concluding or closing the Chapter 11 Cases;

16.   adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.   determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.   hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and released granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22.   hear and determine a motion to approve any settlement of the Cudd Litigation;

23.   enforce all orders previously entered by the Bankruptcy Court; and

24.   hear any other matter not inconsistent with the Bankruptcy Code.

50

# ARTICLE XII.
# MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall (other than for purposes of filing final fee applications and obtaining Bankruptcy Court approval of same) dissolve and members thereof shall be released, exculpated and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date, other than as it relates to the preparation and presentation of final fee applications and obtaining Bankruptcy Court approval thereof.

E.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the

Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

F.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    if to the Debtors, to:

Shale Support Holdings, LLC
600 Jefferson Street, Suite 602
Lafayette, Louisiana 70501
Attn:        Gary Barton
             Charles Caswell
with copies to:

Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Attention:    Shari L. Heyen
              Karl Burrer
              David Eastlake

2.    if to the Term Loan Agent or DIP Facility Agent:

BSP Agency, LLC
9 West 57th Street
New York, New York 10019
Attn:        Brent Buckley

1401 McKinney Street, Suite 1825
Houston, Texas 77010
Attn:        Timothy Murray
             John Horstman

52

with copies to:

Baker Botts L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Attn:          Emanuel C. Grillo, Esq.

H.      *Term of Injunctions or Stays.*

        Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

        Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

        All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at www.donlinrecano.com/ssgh or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

        If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable

pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' and Term Loan Agent's consent; and (3) nonseverable and mutually dependent.

L.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.    *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.    *Waiver or Estoppel.*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

P.    *Term Loan Agent and DIP Facility Agent Consent Rights.*

For each of the provisions in the Plan that provide consent and similar rights to the Term Loan Agent, such rights are intended for the benefit of the Term Loan Agent, the Term Loan Lenders, the DIP Facility Agent, and the DIP Facility Lenders.  To the extent BSP (i) is no longer both the Term Loan Agent and DIP Facility Agent or (ii) in its respective capacities as Term Loan Agent and DIP Facility Agent is no longer authorized to consent on behalf of the Term Loan Lenders and DIP Facility Lenders, respectively, then the Term Loan Agent, the Term Loan Lenders (collectively), the DIP Facility Agent, and the DIP Facility Lenders (collectively) shall each have the consent and similar rights provided in the Plan to the Term Loan Agent.

Dated:  October 25, 2019

Shale Support Global Holdings, LLC,
on behalf of itself and all other Debtors

*/s/ Gary Barton*

Gary Barton
Chief Restructuring Officer

BSP Agency, LLC

*/s/ Brent Buckley*

Brent Buckley
Managing Director